# UNITED STATES DISTRCT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

VINCENT BERRY,                                    Case No.:

      Plaintiff,                               Hon:


vs.


CENTRAL MICHIGAN UNIVERSITY, CENTRAL
MICHIGAN UNIVERSITY MEDICAL SCHOOL,
MARK DESANTIS, M.D., MARIE CATHERIN MATTE, Ph.D.
BRIAN SELENSKI, TINA THOMPSON, LINDA PERKOWSKI,
DANIEL GRIFFIN, MARC SPENCER, JAMIE ALAN, ROBERT
PETERSON, JULLIEN ROSSIGNOL, SANDRA HOWELL, and
GEORGE KIKANO

      Defendants.

*(Jointly, Severally and in their Individual and Official Capacities)*

_____/



# COMPLAINT AND JURY DEMAND

## PARTIES

1. Plaintiff Vincent Berry (formerly known as, *Hussein* Sam Berry) is a resident of the State of Michigan, and at all relevant times has been a resident of the State of Michigan.

2. Plaintiff Vincent Berry was enrolled in Medical School of Central Michigan University, beginning 2015.

3. Defendants Central Michigan University ("CMU") is an accredited public educational institution, established under and regulated pursuant to the laws of the State of Michigan, and located in the City of Mount Pleasant, County of Isabella, State of Michigan.

4. Defendant Central Michigan University Medical School ("Medical School" or "CMED") is a provisionally accredited public educational institution, established under and regulated pursuant to the laws of the State of Michigan, and located in the City of Mount Pleasant, County of Isabella, State of Michigan.

5. Defendants CMU and CMED are public educational institutions that receive federal funding and federal assistance.

6. Defendant Mark DeSantis, M.D. ("Defendant DeSantis) at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

7. Defendant Marie Catherin Matte, Ph.D. ("Defendant Matte"), at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED, serving as Associate Dean for Compliance, Assessment and Evaluation.

8. Defendant Tina Thompson, Dean of CMED, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

9. Defendant Brian Selenski, Assistant Registrar, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

10. Defendant Dr. Linda Perkowski, CMED Senior Associate Dean for Faculty/Administration, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

11. Defendant Daniel Griffin, Assistant Dean of Foundational Sciences Education and Year 1-2 Director, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

12. Defendant Marc Spencer, Ph.D., Assistant Professor of Anatomy, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

13. Defendant Jamie Alan, RPh, Associate Professor and Chair, Student Performance and Conduct Committee, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

14. Defendant Robert Peterson, Ph.D., at all relevant times was a citizen of the State of Michigan and an employee of CMU and CMED.

15. Defendant Julien Rossignol, Ph.D, at all relevant times was a citizen of the State of Michigan, and an employee of CMU and CMED.

16. Defendant Sandra Howell, MD, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

17. Defendant George Kikano, at all relevant times was a citizen of the State of Michigan and an employee of Defendants CMU and CMED.

## JURISDICTION AND VENUE

18. This action arises under 42 USC 1983. Jurisdiction is conferred by 28 USC 1331, 1343(a)(3), (4).

19. Plaintiff asserts claims pursuant to 42 U.S.C. §1983; 42 U.S.C. §1981; and Title VI of the Civil Rights Act, 42 U.S.C. §2000d, over which this Court has subject matter jurisdiction.

20. Plaintiff asserts claims pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, et seq.

21. Plaintiff asserts various state law claims, as set forth below, over which this court has jurisdiction pursuant to 28 U.S.C. §1367.

22. The actions complained of occurred at Central Michigan University Medical School, in the City of Mount Pleasant, County of Isabella, State of Michigan.

23. The amount in controversy for each of Plaintiff's federal claims exceeds $75,000.00.

24. The amount in controversy for each of Plaintiff's state claims exceeds $25,000.00.

## COMMON ALLEGATIONS

25. At all relevant times herein, Defendant Central Michigan University Medical School (CMED), was a provisional medical school, in the accreditation process with the Liaison Committee on Medical Education (LCME).

26. As such, Defendants CMU and CMED were and are subject to the Standards for Accreditation as set forth by LCME.

27. At all relevant times herein, Defendants CMU and CMED conduct, actions and omissions violated various LCME Standards, including, but not limited to Standards 3, 6, 8, 9, 10, 11, and 12.

28. At all relevant times herein, based on information and belief, Defendants CMED and CMU, through their agents and employees, including Defendants DeSantis and Matte, engaged in improper, unethical and illegal practices, procedures, policies, conduct and actions calculated to increase their chances of accreditation, several of which were detrimental to Plaintiff's matriculation.

29. Plaintiff is a Lebanese American, born in the United States.

30. Plaintiff grew up, was raised and educated in Dearborn, Michigan, attending and graduating from Dearborn High School and the University of Michigan-Dearborn.

31. Plaintiff obtained his B.S in Biology and B.A. in Philosophy from the University of Michigan-Dearborn in August 2012, serving as student body President, and graduating with honors and awards.

32. On October 7, 2013, Plaintiff, a Lebanese American, officially changed his name from Hussein Sam Berry to Vincent Berry and thereafter began using his new name for all purposes.

33. Plaintiff obtained his Master's degree from Wayne State University's School of Medicine in August 2014.

34. In August 2014, Plaintiff applied and was accepted into Michigan State University's College of Osteopathic Medicine and Central Michigan University's College of Medicine ("CMED").

35. Plaintiff applied to CMED under the name Vincent Berry, and informed the Admissions Committee of his name change during the application process.

36. Plaintiff accepted admission to CMED for the Fall of 2015.

37. Upon enrollment, Plaintiff was provided and signed a copy of the 2015-2016 Student Handbook, which obligated the parties to follow and adhere to various policies, practices, guidelines and requirements.

38. At all relevant times Plaintiff and Defendants were subject to the 2015-2016 Student Handbook, as provided herein.

39. The Student Handbook provides that the overall combined average and course grade is determined by the Curriculum Committee.

40. Defendant Mark DeSantis, M.D. served on the Admissions Committee from 2014-2017, which included the Committee that granted Plaintiff admission to the CMED for the Fall of 2015.

41. During first year orientation, Plaintiff had a casual conversation with Defendant DeSantis where, after introducing himself to Defendant DeSantis as Vincent Berry, Defendant DeSantis immediately and derisively called Plaintiff "*Hussein*", remarking that he was familiar with Plaintiff because he had changed his name from *Hussein* to Vincent, which he had learned of during the screening of candidates for admission.

42. Plaintiff was shocked and disturbed by Defendant DeSantis' reference to him as Hussein, as he had officially changed his name several years ago to Vincent and no longer used the name Hussein, which is an ethnic name.

43. Further, when Plaintiff learned that Defendant DeSantis formerly lived, grew up and worked in Dearborn, Plaintiff inquired why he moved to his current residence and was derisively told by Defendant DeSantis, "more Vincents and less Husseins", thereby expressing his disdain, low regard, prejudice and discriminatory mindset for people of Arab descent and the Muslim faith.

44. Defendant DeSantis served as the course instructor/director for Plaintiff's Anatomy Lab Practicals throughout his matriculation.

45. Years 1 and 2 of the medical curricula for 2015 at CMED included two (2) types of courses: longitudinal and non-longitudinal courses.

46. Longitudinal courses were continuous, 2-year courses, that students were evaluated on by-semester basis, and included Art of Medicine (AoM),

Science and Community Medicine (SC&M), and Essential Clinical Skills (ECS).

47. Non-longitudinal courses included the Foundational Sciences of Medicine course, and seven (7) Organ System courses: Reproduction and Human Development (Rh-Dev), Cardiopulmonary (CPu), Renal/Endocrinology (REn), Neuroscience and Behavior (NBS), Gastrointestinal (GI), Musculoskeletal/Dermatology (MSD), and Hematology/Oncology (HOnc).

48. The evaluation structure for each non-longitudinal course required students to earn a "Pass" in three (3) separate component areas: Exams, Professionalism, and Team Based Learning (TBL).

49. The 2019 cohort's passing standard for the Exam component in all non-longitudinal courses was an overall combined average (OCA) of 70% on all exams. The didactic exams (i.e. midterm and final exams) made up 90% of the OCA, whereas the Anatomy Lab Practical Exam contributed 10% to the OCA.

50. Longitudinal courses did not include an Anatomy Laboratory subsection of the course and used an independent structure for evaluation and grading.

51. Students in the 2019 cohort were required to complete Integrated Clinical Experience (ICE), which is a one-semester subsection of the ECS course, during either the Fall 2015 or Spring 2016 semesters.

52. Plaintiff's first semester at CMED (Fall 2015) consisted of four (4) courses: *Foundational Sciences, Art of Medicine (AoM), Essential Clinical Skills (ECS) and the accompanying Integrated Clinical Experience (ICE), and Society and Community Medicine (SC&M)*.

53. Despite the fact that Plaintiff did well in his classes, scoring above average in three (3) of the (4) four courses, and receiving a pass grade in *ICE*, his score in *Foundational Sciences* was a combined 70.402%, with 10% of his grade coming from the *Anatomy Lab Practical* which was graded at 49%.

54. Plaintiff's grade in his *Foundational Sciences* class, consisted of three (3) distinct components: (1) Exams: four separate exams, which accounted for 90% of the overall combined average (Plaintiff earned an ADJUSTED grade

of 72.78%), and the other 10% came from the *Anatomy Lab Practical* (Plaintiff earned a 49% from Defendant DeSantis); (2) Individual Readiness Assessment Test (*IRAT*), Group Readiness Assessment Test (*GRAT*), and Group Activity Exercise (*GAE*) (Plaintiff earned 84.33% overall combined average, which was about 10% higher than the class average for this component grade); and (3) Professionalism, which the student earned a "Pass" in all of his courses.

55. During the second semester in the Spring of 2016 (January 2016 – June 2016), Plaintiff's coursework consisted of five (5) courses, each with a Lab Practical and Exam components: *(1) Reproduction and Human Development; (2) Cardiopulmonary, (3) Essential Clinical Skills; (4) Renal and Endocrinology; (5) Art of Medicine; Science and Community Medicine*. Plaintiff continued to score passing grades on the Exam component of each of these courses, achieving grades of 75%, 72%, 91%, 75%, and 86.2%, respectfully.

56. Plaintiff scored passing grades during his Spring 2016 semester, as follows:

    a.  Reproduction and Human Development – 75%

    b.  Cardiopulmonary – 72%

    c.  ECS – 91%

    d.  Renal and Endocrinology – 75%

    e.  Art of Medicine – Pass ("P")

    f.  Science and Community Medicine – Pass ("P")

57. At all relevant times herein, Defendant DeSantis administered the Anatomy Lab Practical exams, whereby he possessed and exercised complete discretion to construct the format of exams, including but not limited to deciding the exam questions and answers, determining whether or not to accept alternative answers, and whether to wholly discard exam questions.

58. Plaintiff was purposefully graded below average by Defendant DeSantis and/or not extended the same opportunities for grade improvement as other similarly situated students.

59. Beginning in Plaintiff's first semester, Defendant DeSantis continuously artificially lowered Plaintiff's grade in his Anatomy Lab Practicals and/or failed to adjust them as for other similarly situated students, based on race, sex, religion, national origin and color.

60. Concerned over the paradox of receiving passing grades on the exam components, while failing to do so on the Anatomy Lab Practical, for which Plaintiff was especially diligent with respect to study time and effort, Plaintiff asked Defendant DeSantis to see his answers to his Anatomy Lab Practical exams.

61. Defendant DeSantis refused to share Plaintiff's answers with him, dismissively and intentionally misinforming Plaintiff that it would not be possible to provide him the opportunity to see his own answers.

62. Defendant DeSantis' refusal to allow Plaintiff to review his grades was in express violation of Plaintiff's right to view his grades as secured by CMU and CMED policy, practice and protocol and the laws of the State of Michigan. Defendant's refusal was based on considerations of race, sex, religion, national origin and/or color.

63. Beginning in the first semester and continuing throughout Plaintiff's matriculation, Defendant DeSantis continuously subjected him to discriminatory, retaliatory, embarrassing, harassing, offensive and insulting remarks, conduct and discriminatory treatment based on color, national

origin, sex, religion and race; and in violation of express, promulgated university rules, regulations, codes of conduct and other obligatory conditions of Defendant's employment.

64. Beginning the first semester, Defendant DeSantis continuously retaliated against and discriminatorily singled out Plaintiff for ridicule, shame, scorn, embarrassment and discriminatory treatment, based on color, national origin, race, sex, and religion.

65. That said conduct of Defendant DeSantis included, but is not limited to, routinely and repeatedly harassing and embarrassing Plaintiff by calling on him in class to provide answers, instead of asking which student knew the answer. Defendant DeSantis would call on Plaintiff repeatedly without him raising his hand, causing Plaintiff's classmates and his class group to mock and chide him to be on his toes because Defendant DeSantis would randomly call on him, unannounced, as opposed to polling for who knew the correct answer to Defendant DeSantis' questions. All of Defendant DeSantis' discriminatory actions caused extreme anxiety to Plaintiff.

66. Defendant DeSantis' discriminatory conduct, included, but was not limited to, interruption, embarrassment, unjust criticism and intentional infliction of emotional stress surrounding Plaintiff's group presentations. Whenever Plaintiff gave his presentation, Defendant DeSantis would purposefully come by and unnecessarily and abruptly criticize and interrupt his presentation. Other presenters did not receive similar treatment, and even apologized to Plaintiff for Defendant DeSantis' treatment, and encouraged Plaintiff to take action against Defendant DeSantis' discriminatory conduct.

67. In response to Defendant DeSantis' discriminatory conduct, Plaintiff wrote three (3) university sanctioned anonymous complaints on Concern Cards regarding the discriminatory behavior of Defendant DeSantis. The first card was submitted in May 2016, the second in September 2017, and the third in October 2017. Plaintiff, among other things, complained that Defendant DeSantis: (1) targets him; (2) arbitrarily calls on him to provide answers; and (3) stopped the entire class to mock and scorn Plaintiff about alerting Defendant DeSantis that he was leaving class to use the bathroom. The Concern Cards were provided to Defendant DeSantis, whose discriminatory conduct only increased and grew worse.

68. Plaintiff filled out every online course-end evaluation for Defendant DeSantis, which compels students to login using a unique username and password which is personal to that student, and viewable by the Instructor. On at least one evaluation, Plaintiff included his name at the bottom.

69. Plaintiff's evaluations made specific reference to Defendant's discriminatory conduct including, but not limited to, an embarrassing and humiliating incident in October 2017, where DeSantis made a mockery of him in class when Plaintiff informed Defendant of his need to take a bathroom break. During this incident Defendant DeSantis loudly demanded every student to stop their presentations, stood up and shouted "Hey everyone since when do we have to ask to go to the bathroom?!"  He then looked at Plaintiff and condescendingly, derisively and with contempt said "Well, there is your answer!"  thereby making a mockery of Plaintiff in front of his peers.

70. After learning of Plaintiff's complaints about Defendant's discriminatory and unprofessional conduct, Defendant DeSantis continued his discriminatory and retaliatory conduct against Plaintiff.

71. That Defendant DeSantis, during class, frequently, purposely and openly endorsed racist and discriminatory comments and actions of politicians, including those of Donald Trump.

72. That many of these racist and discriminatory acts and comments were intended to, and did in fact, upset, embarrass, humiliate, cajole and negatively impact Plaintiff's wellbeing, matriculation and academic success.

73. That based on information and belief, Defendant DeSantis did not treat Plaintiff fairly, discriminated and retaliated against Plaintiff by not affording Plaintiff, as he did other similarly situated individuals, the benefit of doubt, leeway, leniency, and additional consideration, when it came to grading, rounding, excluding questions and other benefits and expression of his discretion.

74. That based on information and belief, Defendants Matte and DeSantis were involved in a close and/or romantic relationship and availed themselves of opportunities to frequently discuss Plaintiff and the discriminatory and retaliatory actions they planned against and/or imposed on Plaintiff, all based

on Plaintiff's race, sex, religion, national origin and color, and in retaliation for Plaintiff exposing their behavior, conduct and actions.

75. That Defendants Matte and DeSantis conspired against Plaintiff in a way and with an effort to fail him and directly or indirectly remove him from Medical School, in violation of Plaintiff's civil rights as secured by federal and state law, as set forth herein.

76. Defendants' discriminatory conduct and violation of Plaintiff's federal and state civil rights was ongoing and continuous.

77. Plaintiff's third semester (Fall 2016) consisted of the following four (4) courses: Neuroscience and Behavior ("NBS"), Gastrointestinal Wellness ("GI"), Essential Clinical Skills ("ECS"), and Society and Community Medicine ("SC&M").

78. Plaintiff passed and completed all components of the SC&M and ECS courses and was marked as "Progressing as Expected" on the December 2016 progress report.

79. In NBS, a non-longitudinal course, Plaintiff passed the professionalism component, and earned an 84.46% on the Team-Based Learning ("TBL") component, which was 10% higher than the class average of his peers. However, Plaintiff's overall combined average for the exam component was 69% (72.1% on didactic exams and 36% on the NBS Anatomy Lab Practical exam, as taught/directed by Defendant DeSantis).

80. Plaintiff passed the TBL and Professionalism components in the GI course. However, Plaintiff's overall combined average on the exam component was 69.1% (73.298% on didactic exams and 31.11% on the GI Anatomy Lab Practical exam), as taught/directed by Defendant DeSantis.

81. Plaintiff's low marks on the Anatomy Lab Practical exams were a result of Defendant DeSantis' discriminatory, malicious, reckless, indifferent and retaliatory conduct.

82. Defendants DeSantis and Matte adjusted the Anatomy Lab Practical for NBS which, based on information and belief, carried an unadjusted class average of approximately 53% for all students combined. After the adjustment by Defendant DeSantis, Plaintiff's pre-adjusted score, which was a 36%,

remained improperly unaffected, despite the class average increasing to approximately 70% after said adjustment.

83. The NBS course was scheduled from September 1 – October 21, 2016 and GI course was scheduled from October 24 – December 9, 2016. Plaintiff's score for NBS was released on Monday, October 24, 2016

84. On October 25, 2016, Defendant Matte contacted Plaintiff to arrange a meeting in her office for October 27, 2016 at 2:00 p.m. regarding his NBS final course grade.  At the meeting, Defendant Matte presented Plaintiff with the options of: (1) appealing his course grade, thereby prohibiting him from attending classes pending the appeal, which would also have forced him to return in the Fall of 2017 and repeat the year; (2) retake the Final Exam and Lab Practical; *or* (3) remediating the entire course during winter break ("M2 Holiday Break"), a known period of time-off for students following a Fall Semester.

85. After Plaintiff decided on option (2) – retaking the Final Exam and Lab Practical – Defendant Matte required Plaintiff to retake the Final Exam and Lab Practical eleven (11) days later, on Monday November 7, 2016, contrary

to CMED policy labeled "Scheduling of Assessments & Examinations in Years 1-2," which states that the Curriculum Committee regulates "the timing and number of assessments for all courses." Furthermore, the Student handbook provides that "[t]he time of the retake examination is negotiated with course directors and cannot interfere with any other course."

86. That, as stated *supra*, the course requirement was that 90% of the course grade was based on the mid-term and final exams, only 10% was based on the Lab Practicals, and a 70% overall combined average was sufficient to pass the course.

87. Contrary to CMED and CMU policy, practices, protocol and applicable law, Defendant Matte required Plaintiff to also score a 70% on **both** the re-take Exam **and** Lab Practical, even after Plaintiff directed Defendant Matte to the applicable course syllabus and student handbook, which was contrary to her new discriminatory requirement.

88. When Plaintiff informed Defendant Matte of the applicable standards to achieve a 70% overall combined average, which is sufficient to pass the course and as outlined in the syllabus and determined by the Curriculum

Committee, Defendant Matte responded with a pretense for her discrimination, "well, I noticed you haven't performed well on your Lab Practical exams, so its 70% for you!"  Defendant reiterated this in an email to Plaintiff.

89. Plaintiff, challenging Defendant Matte's extreme and unwarranted deviation from relevant policy, practice, procedure and guidelines, informed Defendant Matte that the unadjusted class average for his class on the NBS Lab Practical was approximately 53% and that he had never scored above a 53% on any Lab Practical, which Defendant merely remarked "tough". These highly suspect, reckless, prejudicial and egregious actions by Defendant Matte were discriminatory and retaliatory.

90. That, in fact, the unadjusted score for the Plaintiff's class on the NBS Lab Practical was approximately 53%.

91. That, in fact, the adjusted score for Plaintiff's class on the NBS Lab Practical was approximately 70%.

92. That, in fact, Plaintiff had never scored above a 53% on any Lab Practical.

93. According to pages 7-8 of the CMED College Bylaws, the authority for setting the grading policy and passing standards is the Curriculum Committee, which Defendant Matte had never received permission from in order to deviate from the established policies, practices, guidelines and procedures.

94. On or about October 19, 2016, two (2) days after Plaintiff's final NBS examination, and prior to Plaintiff's NBS Retake Examination (November 7, 2016) and NBS Remediation Examination (December 8, 2016), that Chairman Harold Belle, Ph.D., conveyed his concern with how grades are inflated and how scores are adjusted, claiming that "there is no accountability with the adjusted scores!," therefore lending itself to discriminatory and retaliatory application.

95. Plaintiff was denied the opportunity to negotiate or otherwise request a reasonable change to the retake examination's time.

96. According to Defendant Matte's schedule requirement for the retake examination, Plaintiff was required to write the NBS retake examination

during an ongoing GI course, and less than a week prior to the GI midterm examination. Essentially, Plaintiff was compelled by Defendant Matte to retake a final examination in the same week as a current midterm examination.

97. According to Defendant Matte's deviated grading structure, Plaintiff would be required to almost double his Anatomy Lab Practical score from 36% to 70% in less than a week.

98. The structure of the NBS Anatomy Lab Practical retake examination completely changed from a written practical examination format of identifying parts on a human cadaver, to a 40-question multiple-choice picture examination on a laptop, which portrayed small, visually obstructed photos.

99. The NBS Anatomy Lab Practical retake examination was not curved, and questions were not "thrown out" as with the original Anatomy Lab Practical Plaintiff completed. Furthermore, the questions on the retake examination drastically differed from the original Anatomy Lab Practical examination.

100.     Also, the questions on the NBS Anatomy Lab Practical retake examination, which are decided by Defendants DeSantis and Spencer, opposed the structure and format of the Anatomy Lab Practical examination, as outlined in the course syllabus and lab practical manual.

101.     Plaintiff was not afforded the opportunity to study in the anatomy laboratory whereby students use a human cadaver to direct their study, and as was custom for the Anatomy Lab Practical.

102.      Had Defendants Matte and DeSantis abided by the applicable CMED policies, practices, guidelines and protocol, Plaintiff would have been afforded the appropriate retake examination using the proper human cadavers, as opposed to testing on a laptop, which portrayed small, visually obstructed photos.

103.     The NBS Anatomy Lab Practical retake examination screen was too small to view the pictures, making it impossible for Plaintiff to identify the correct answers.  Plaintiff complained to Dr. Spencer afterwards via email, with no response forthcoming.

104.    Had Plaintiff been graded based on the appropriate assessment and examination method, as outlined in the NBS course syllabus, Plaintiff would have received an overall combined average in the NBS course of 73.92% - (Exam score: 76.43% x 0.9) + (Lab Practical score: 52.5% x 0.1), which was a passing grade.

105.    On or about December 13, 2016, Defendant Matte conveyed to Plaintiff via e-mail, the grading standard she would apply, contrary to the appropriate grading standard as outlined in the NBS course syllabus, and thus erroneously evaluated Plaintiff's grade below the passing standard.

106.    On the following day, Defendant Matte contradicted her previous grading standard with another inappropriate grading standard via e-mail, and again contrary to the applicable policies, practices, guidelines and procedures.

107.    According to the applicable CMED and/or CMU policy entitled, _Determination of Grades_, "[g]rades for each course will be calculated as prescribed in the approved Assessment Plan for each course for that academic year…"

108.     Said policy further provides that "[t]he final grade represents the global assessment of a student in the areas of medical knowledge, skills, and behavior as determined by the approved assessment methods specific to that course or clerkship."

109.     The *College of Medicine Bylaws*, provide that "[t]he Curriculum Committee is charged with the responsibility and authority to approve major changes to the grading system for the assessment of the student performance."

110.     Defendant Matte's grading and scoring requirements for Plaintiff's retake exam was a major change to the grading system, and was not authorized by the Curriculum Committee.

111.     Based on information and belief, Defendant Matte sought permission from the Curriculum Committee to apply the grading system that she did to Plaintiff's retake examination.

112.     Based on information and belief, Defendant Matte was denied permission by the Curriculum Committee from applying her proposed grading system to Plaintiff.

113.     After failing to meet the unreasonable, discriminatory and retaliatory 70% requirement for the Anatomy Lab Practical retake examination, Defendant Matte denied Plaintiff the opportunity to appeal the course grade and/or grading structure.

114.     Instead, continuing her discriminatory and retaliatory conduct, Defendant Matte offered Plaintiff a Remediation Exam for the NBS course, again setting the grading structure, exam curriculum and date/time of the exam, contrary to applicable aforementioned, and other, CMED/CMU policies, practices, guidelines, procedures and legal requirements.

115.     Plaintiff was required to remediate only the NBS Anatomy Lab Practical component of the course, and was required to achieve a 70% grade, unlike his classmates.

116.     Defendant Matte's grading and scoring requirements for Plaintiff's NBS Remediation Examination was a major change to the grading system, and was not authorized by the Curriculum Committee.

117.     Based on information and belief, Defendant Matte sought permission from the Curriculum Committee to apply the grading system that she did to Plaintiff's Remediation Examination.

118.     Based on information and belief, Defendant Matte was denied permission by the Curriculum Committee from applying her proposed grading system to Plaintiff's Remediation Examination.

119.     Defendants scheduled Plaintiff's Remediation Examination during the same week as his GI anatomy Lab Practical and GI final course exam, leaving Plaintiff to study for, and take, multiple examinations in the same week as follows:

    a.  Monday December 5, 2016 – GI Exam;

    b.  Tuesday December 6, 2016 – Anatomy Lab Practical;

    c.  Thursday December 8, 2016 – GI Practical Exam AND NBS Anatomy Remediation Examination; and

d. Friday December 9, 2016 – Comprehensive Basic Science Examination.

120.    The Remediation Examination was scheduled during an ongoing course and during the same week of the GI anatomy Lab Practical and GI final course examination, in violation CMED and CMU practices, rules, policies, guidelines, protocols and procedures.

121.    Defendants' unreasonable, illegal and improper Remediation Examination schedule was discriminatory, retaliatory and calculated to directly or indirectly remove Plaintiff from CMED.

122.    Plaintiff wrote the NBS Anatomy Remediation Examination on Thursday, December 8, 2016 and again scored a 52.5%, which was not scored based on the Defendants' procedures, practices, rules, guidelines and processes, in violation of Plaintiff's civil rights, and was based on his race, religion, color and national origin and being otherwise retaliatory.

123.    That the Defendants herein recklessly, egregiously, arbitrarily, discriminatorily, retaliatory and with deliberate indifference, imposed a 70%

minimum passing score standard on Plaintiff, contrary to CMU and CMED

policies, rules, practices, guidelines, protocols and procedures.

124. Defendants' discriminatory, retaliatory and otherwise illegal

Remediation Examination caused Plaintiff to score a less than passing

combined mark of 69.18% on his GI examination, due in part to a test

schedule that resulted in sitting for five (5) examinations within five (5) days.

125. Moreover, Plaintiff was denied full credit for the Team Based

Learning component of the GI course, based on a false claim of two

unexcused absences, which Defendants, including Defendant Matte, refused

to correct after being provided evidence by Plaintiff that the absences were,

in fact, excused.

126. Had Plaintiff been treated fairly, without discrimination, retaliation,

reckless disregard and deliberation indifference for his civil rights and other

common law, constitutional and statutory rights, his grade for the GI course

with the corrected unexcused absences would have been 70.32%.

127.     Plaintiff appealed his reported failure of the GI and NBS courses to the Year 1-2 Director, Dr. Linda Perkoswki, Ph.D, which was unreasonably denied in violation of Plaintiff's civil rights as set forth herein, and Defendants, CMED and CMU's policies, practices, guidelines, procedures and protocols.

128.     On January 06, 2017, in compliance with the CMU policy entitled "Capricious Grading", Plaintiff appealed to Dean Kikano.  However, Dean Kikano refused to meet with Plaintiff, claiming that he does not handle any academic matters. Plaintiff referred him to the policy and the Dean continued to refuse, stating that without a representative from the office of institutional equity, he would not give Plaintiff his time.

129.     The policy neither requires the condition insisted upon by Dean Kikano, nor did Dean Kikano request such a representative based on his understanding of the policy.

130.     On or about January 7, 2017, Plaintiff appealed the denial to Defendant Perkowski, Senior Associate Dean for Faculty/Administration, who initially agreed to overturn the decision of the Course Directors.  However, based on

information and belief, Defendant Perkowski retracted her decision to overturn the appeal denial based on, and in support of, the bias, prejudice, discrimination and retaliatory conduct and influence of Defendant Matte.

131.     Plaintiff's status as a student was improperly released to his peers, Firas Firas and Kala Frye, the day before the appeal process concluded, which was on January 6, 2017.

132.     On or about January 23, 2017, Plaintiff was improperly and illegally forced to appear before the Student Performance and Conduct Committee ("SPCC"), and was denied a request for access to the necessary information, resources and assistance to properly defend himself or prepare a minimal defense, contrary to Defendants CMU and CMED policies, practices, procedures, guidelines and protocols and Plaintiff civil rights as set forth herein.

133.     SPCC Committee Chair, Defendant Dr. Conway, refused to allow Plaintiff to present evidence to the SPCC Committee that would have allowed for the overturning of his grades, in violation of his civil rights and CMED and CMU's policies, practices, rules, guidelines, protocols and procedures.

134.    Based on the prior violation of Plaintiff's civil rights and in continued violation thereof, as set forth herein, the SPCC ordered that Plaintiff would have to repeat his second year, removing Plaintiff from his cohort group.

135.    On or about January 24, 2017, Plaintiff met with psychologist Cory Cole for anxiety as a direct result of the SPCC decision.

136.    As a result of Defendants' prior discriminatory, retaliatory and reckless conduct, Plaintiff was required to repeat the second year, which resulted in Plaintiff having to unfairly retake courses that he had passed the year before, in violation of his federal and state rights as set forth in this Complaint.

137.    Moreover, Plaintiff's course of study during the repeat second year was unreasonable and more demanding than that of his cohorts or other students matriculating at CMED, because as indicated by the student handbook policy labeled "Unscheduled Time Year 1-2", students must have ample self-study time.

138.    The CMED curriculum is approved by the University.

139.     That the aforementioned policy ("Unscheduled Time Year 1-2") supported the curriculum so as to allow for student success.

140.     Under the above-stated circumstances, Plaintiff was denied the opportunity for academic success.

141.     When Defendants, in violation of Plaintiff's civil rights, changed his course of study by doubling it, they violated the CMU/CMED's policy and procedures with respect to how curriculums are established and approved by CMU/CMED.

142.     Moreover, the "Unscheduled Time Year 1-2" policy was based on the curriculum course of study, primarily to support academic success. Defendants failed to modify, adjust or otherwise alter this policy to support this new, unapproved course of study they imposed on Plaintiff.  The foregoing was done in violation of Plaintiff's rights as set forth herein and for discriminatory, retaliatory and other purposes prohibited by the law, as set forth herein.

143.    The SPCC required Plaintiff to repeat his second year of study. However, Defendants improperly forced Plaintiff to repeat many courses that Plaintiff had already passed during his first year of study.

144.    As a result of Defendants' discriminatory and retaliatory conduct, in deliberative indifference to Plaintiff's rights as set forth herein, Plaintiff was forced to repeat parts of his Year 1 course of study during the Fall 2017 – 2018 semester. As a result, Plaintiff was scheduled for 7 final examinations in one week, including ECS GI (taken in Fall 2016 and received a 95%); ECS NBS(taken in 2016 and received a 89%); ECS for Renal/Endo (taken in Year 1 Spring  2016 and received a 89%); NBS Lab Practical Exam; Art of Medicine [taken in Year 2 and received  a "Pass"]; Integrated Community Experience ("ICE) [taken Year 1 and received a "Pass"]; Society and Community Medicine [taken Year 2 and received a "Pass"]; NBS Final Exam; and the Comprehensive Basic Science Examination (CBSE).

145.    Before Plaintiff was officially notified that he would have to repeat the second year, Defendants, in violation of his civil rights and CMED/CMU policies, practices, rules, guidelines, and protocols, informed his cohorts that

he would no longer be participating in group activities with their cohort, and otherwise informed them that Plaintiff was dismissed from their cohort.

146.     Due to the discriminatory, retaliatory, extreme, egregious and outrageous conduct of Defendants, Plaintiff developed severe anxiety, extreme feelings of shame and embarrassment, panic attacks, chronic depression and other debilitating physical and psychological illnesses and symptoms, necessitating medical treatment, intervention and counseling.

147.     Plaintiff's physical and psychological illnesses, injuries and symptoms persist to this day.

148.     Due to the discriminatory, retaliatory, extreme, egregious and outrageous conduct of Defendants, Plaintiff developed severe anxiety, extreme and persistent feelings of shame and embarrassment, panic attacks, depression and other debilitating physical and psychological illnesses, seriously impacting his medical school matriculation, especially his ability to effectively study, participate in group assignment and take examinations.

149.     Beginning August 28, 2017, CMU Psychiatrist, Christine M. Pacold, MD, commenced treating Plaintiff for ADHD and anxiety, especially test anxiety.

150.     Plaintiff began his third (3) semester in September 2017, acquiring the resources necessary to successfully pass his classes, particularly Neuroanatomy.  Plaintiff hired a tutor, met with Dr. Spencer every weekend, and by the end of the semester began tutoring other students in his Neuroanatomy class.  Dr. Spencer commended him on his far reaching efforts in an email conversation.

151.     Defendant DeSantis persisted in and increased his discriminatory and retaliatory conduct against Plaintiff, including, but not limited to, belittling comments, denying him disability accommodations—as approved by the Office of Disability Services CMU—, and grade tampering, unfair grading and non-application of policies and practices regarding grading, causing additional and exacerbating existing physical and psychological illnesses and symptoms.

152.    Due to the aforementioned conduct of Defendants, Plaintiff experienced extreme anxiety and panic attacks while writing his NBS midterm examination on September 18, 2017, resulting in a 67% score on the exam.

153.    As a result of the conduct of and treatment by Defendants, Plaintiff had been treating with a CMU Psychiatrist. However, due to the inability to immediately schedule a session to address his recent bout of anxiety and panic attacks, on September 21, 2017 Plaintiff met with CMU Psychologist Cory Cole in Foust Hall to address his anxiety and panic attacks.

154.    Plaintiff also met with Defendant Matte on October 3, 2017 to discuss his situation, specifically the impact of his prior experiences and conduct of Defendants on his ability to take examinations. Defendant Matte refused to offer any assistance, and instead, referred Plaintiff to Defendant Brown, Associate Dean of Student Affairs.

155.    Plaintiff went to see Defendant Brown who is a psychiatrist and Ph.D., in order obtain documents that would afford him ADA accommodations. Dr. Brown taught Plaintiff's NBS course with respect to depression, anxiety and

anti-depressant and anti-anxiety medication. Moreover, Defendant Brown lectured extensively about, and purported to be an expert in exam anxiety.

156.     Despite Defendant Brown's extensive expertise and experience with anxiety, depression, and pharmaceutical intervention for these mental conditions, with indifference and reckless disregard for the welfare and safety of Plaintiff, she informed Plaintiff that his issues would be resolved with meditation and advised him to engage in mindful meditation.

157.     As a result of Defendant Brown's indifference and reckless disregard for Plaintiff's welfare and safety, Plaintiff did not receive any feasible or reasonable accommodations for his NBS Anatomy Lab Practical taken on October 16, 2017.

158.     On or about October 16, 2017 Plaintiff received a 67% on his Anatomy Lab Practical and 67% on his final examination, resulting in extreme anxiety.

159.     On or about October 23, 2017 Plaintiff received a final grade of 67% in his NBS course.

160.    On or about October 24, 2017 Defendant Jamie Allen, chair of the
SPCC, directed Plaintiff not to return to his classes.

161.    On or about October 24, 2017, Plaintiff, as a result of the
aforementioned discriminatory, retaliation and deliberatively indifferent and
reckless conduct, actions and treatment of Defendants, experienced
uncontrollable anxiety, panic attacks and thoughts of suicide, forcing him to
seek medical assistance at McLaren Hospital's Emergency Department.

162.    Defendants' inhumane, discriminatory, retaliatory, deliberately
indifferent and reckless treatment of Plaintiff caused suicidal tendencies and
thoughts in Plaintiff.  When Plaintiff pleaded with Defendant Matte to assist
him with his suicidal thoughts and tendencies, she refused to respond, in
furtherance of Defendants' retaliatory, discriminatory, deliberately
indifference and reckless conduct and treatment toward Plaintiff.

163.    Plaintiff, in desperation, and in accordance with the rules, regulations,
policies, procedures, guidelines and protocols of Defendants CMU and
CMED, requested Defendant DeSantis, via email, to look over his

examination. Defendant DeSantis improperly refused Plaintiff's lawful request, based on Plaintiff's race, national origin, disability, religion and color.

164.    On or about October 25, 2017, Dr. Christine Pacold, M.D., a CMU psychiatrist, indicated and determined, via an official CMU Health Services communication, that Plaintiff's conditions had dramatically increased, especially his anxiety related to exams and noted that Plaintiff had a series of recent panic attacks prior to and during an exam.  Dr. Pacold, therefore advised that Plaintiff's symptoms were "severe enough at this point that they are disrupting his ability to take tests under normal conditions" and recommended that Plaintiff be provided "a quieter environment and…. sufficient time to read questions in an unhurried manner."

165.    Dr. Pacold had prescribed Plaintiff anti-depressant medication and recommended that he receive an accommodation for examination purposes on or about October 31, 2017.

166.    On or about October 31, 2017 Plaintiff was granted an accommodation by Defendants CMU and CMED, which included a 1 ½ time extension for taking examinations and ability to take examinations in a quiet setting.

167.    Despite Plaintiff's grant of an accommodation, he was denied the accommodation by Defendants, including, but not limited to, Defendant DeSantis. Said violation of his rights to an accommodation under Michigan Law, resulted in emotional, physical and psychological injury to Plaintiff. Moreover, as a result of Defendants' denial of Plaintiff's right to an accommodation, Plaintiff's performance on his examinations and ability to pass his courses was compromised, resulting in receipt of failing grades and threat of dismissal from CMED.

168.    Defendant DeSantis feigned not to have been aware of Plaintiff's accommodation as granted by CMU and/or CMED, in violation of the applicable laws as set forth herein.

169.    Plaintiff, in accordance with relevant CMU and CMED policies, rules, regulations, practices, procedures and protocols emailed and met with several course directors regarding several questions, the answers to which impacted

his grades, including: (1) the number and specific questions that were thrown out on the NBME and CMED examinations; (2) the class average for both examinations, the NBS final and the Neuroanatomy Practical; (3) whether credit was given to a question Plaintiff challenged after the writers acknowledged two possible answers; and (4) how was the CHADs and VASc question handled for all students in the class.

170.    Plaintiff challenged the questions with Dr. Harold Belle, who wrote the questions for the exam and who agreed with Plaintiff that his challenge of one of the questions was valid.

171.    That credit for the challenged question would have resulted in Plaintiff passing the course.

172.    In response to Plaintiff's accepted challenge, Dr. Belle informed Defendant Dr. Robert Peterson to throw out the challenged question or accept two different answers, either of which would have resulted in Plaintiff passing the course.

173.    Defendant Peterson refused to perform as requested and directed by Dr. Belle, with full knowledge that Dr. Belle's request would positively impact and benefit Plaintiff.

174.    Defendants and their agents, employees and/or representatives did not provide Plaintiff any answers or follow up correspondence with respect to these inquiries, in violation of CMU and CMED policies, rules, regulations, practices, procedures and protocols and in further violation of Plaintiff's legal and civil rights, as set forth herein.

175.    Despite Plaintiff's right to review his NBS Anatomy Lab Practical examination, pursuant to CMU and CMED policies, rules, regulations, practices, procedures and protocols, Defendant Spencer made it unreasonably difficult and extremely burdensome for Plaintiff to review his examination based on Plaintiff's race, religion, national origin, color and with deliberate indifference and reckless disregard to Plaintiff's federal and state statutory and common law rights.

176.    Moreover, based on information and belief, a correct answer on Plaintiff's examination was improperly erased by Defendant DeSantis,

resulting in Plaintiff missing a passing score by one question.  And although Defendant Spencer had the discretion to recognize and give credit for the erased correct answer, he refused to do so, based on Plaintiff's race, religion, national origin and color, and with deliberate indifference and reckless disregard for Plaintiff's rights and the CMU and CMED policies, rules, regulations, practices, procedures and protocols that provided Plaintiff certain rights and expectations.

177.     Plaintiff appealed a number of concerns to Defendant Griffin, the Year 1-2 Director, noting at least seven (7) concerns evidencing bias, prejudice, discrimination, retaliation and violation of CMU and CMED policies, rules, regulations, practices, procedures and protocols, ostensibly in violation of Plaintiff's federal and state statutory and common law rights, as set forth herein.  Plaintiff's appeal was provided to Defendant Griffin in writing on or about November 14, 2017.

178.     Plaintiff did not receive the granted accommodation of a quiet room for his GI Lab Practical taken on December 4, 2017 and his extended time for taking the exam was only granted the day before the examination.

179.     On or about December 11, 2017, Defendant Griffin summarily denied Plaintiff's appeal without responding to multiple issues of irregularity, discrimination, policy violations and other concerns presented to him by Plaintiff.

180.     Defendant Griffin's summary denial was contrary to his stated opinion, made to Plaintiff on or about December 5, 2017, that he thought Plaintiff was being unfairly treated.

181.     Plaintiff was again improperly and illegally forced by Defendants to appear before the SPCC on or about January 22, 2018.

182.     In violation of Defendants CMU and CMED policies, rules, regulations, procedures, guidelines, practices and protocols, as applicable to Plaintiff, Defendants commenced SPCC proceedings with several members who had a conflict of interest and without a quorum.

183.     Specifically, Defendant Griffin recused himself due to his conflict of interest, however voting members, Avi Dobrin and Kala Frye (fellow students and class-group members), Defendant Spencer, and Defendant

Rossignol (neuroscience course director who had final say on Plaintiff's grade), had obvious conflicts of interest and refused to recuse themselves.

184.    The SPCC, in violation of Plaintiff's civil rights as set forth herein, and in violation of the rights afforded to Plaintiff by Defendants' rules, regulations, procedures, guidelines, practices and protocols, voted to remove Plaintiff from CMED.

185.    Plaintiff appealed the SPCC's decision and an ad hoc committee set up by Tina Thompson overturned their decision. However, the ad hoc committee imposed discriminatory and retaliatory conditions on Plaintiff, requiring that Plaintiff remediate and pass the NBS and GI courses (each including a final exam and Anatomy Lab Practical exam) with a score of 70%. The 70% requirement was now official policy for all students, but was improperly and discriminatorily applied in prior years to Plaintiff, contrary to then applicable policies.  Moreover, Plaintiff had to now remediate at the end of the year and not during courses, as he was required to do in prior semesters in violation of CMU and CMED policies.

186.    Plaintiff wrote his Hematology Oncology Practical and Final Examination in March 2018 with frequent bouts of extreme and severe test anxiety, which was caused by the illegal, discriminatory, retaliatory, reckless and deliberatively indifferent conduct, actions and behaviors of Defendants.

187.    According to Defendants, Plaintiff did not score the required 70% on the Hematology Lab Practical examination and final examination. Moreover, Plaintiff was refused the opportunity to review his exam.

188.    Both Plaintiff's retake and remediation examination for NBS used computer screenshots of cadaver representations which were difficult, and in most cases impossible to view and Plaintiff complained to the proctor.

189.    As a result of the deficient viewing screen and defective representation of therein, Plaintiff scored 52.5% on the retake examination which was deemed not passing as a result of arbitrary and discriminatory grading scale instituted solely against Plaintiff.

190.    Defendants, through artificial manipulation of credits and grades, were able to portray Plaintiff as an under-achieving student, contrary to the facts stated herein.

191.    However, as a graphic example of Plaintiff's ability to succeed and thrive in the CMED program, he achieved an above-average score (80th percentile) on the Comprehensive Basic Science Examination ("CBSE") practice board exam. In fact, Defendant Matte inadvertently sent Plaintiff, not only his CBSE exam score, but the scores of his cohorts. Then, realizing her error, demanded Plaintiff delete the files, but before he could comply, Defendant Matte, or someone on her behalf, went into Plaintiff's email and deleted the documents.

192.    The CBSE practice exam is an important exam, administered by CMED to students on (4) four separate occasions during their second year, as it measures their overall progression towards passing the NBME Board Examination.  It measures the results of all medical students who took the exam throughout the U.S., and Plaintiff's score placed him in the 80th percentile.

193.    After the deletion, Defendant Matte never resent Plaintiff's CBSE practice exam results, despite sending his cohorts their results.

194.    Despite Defendants' attempts at inflating scores by adjusting grades for classes through either artificial, arbitrary, improper or proper manipulation of credit for questions and/or exclusion of questions, Plaintiff was denied the benefit of this action and conduct by Defendants, thereby detrimentally impacting his matriculation and enrollment in CMED.

195.    Plaintiff should have received the benefit of this action of grade manipulation/adjustment by Defendants as evidenced by an improvement/increase in his overall final grade for the class.

196.    That the lack of benefit to Plaintiff from Defendants' aforementioned grade manipulation/adjustment was instituted for and conducted in a manner that was intended to and did result in discrimination and retaliation toward Plaintiff.

197.    That the lack of benefit to Plaintiff from Defendants' aforementioned grade manipulation/adjustment was instituted for and conducted in a manner

of reckless disregard for the safety, welfare, physical and psychological wellbeing, and academic success of Plaintiff.

198.    On January 14, 2018 Plaintiff reached out to the Assistant Registrar, Brian Selenski, requesting to view all his grades, examinations, lab practicals, retakes and remediation examinations pursuant to and in accordance with the CMED policy - "Review of Academic Records".

199.    Pursuant to the aforementioned policy: "2. The CMED Assistant Registrar maintains and stores the student academic records at the Mt. Pleasant campus. 3. Requests for access to the personal academic record should be made in writing to the CMED Assistant Registrar. CMED will comply with access at most within 10 days.  Upon a request, a CMED staff member will provide an explanation of the contents of the academic record."

200.    Defendants repeatedly requested and attempted to force Plaintiff to withdraw from his medical school program.

201.    Defendants' actions and conduct, as set forth herein, resulted in Plaintiff being forced to withdraw from CMED.  Specifically, Defendants

Matte, Allen, Griffin, Brown, and Thompson, requested and demanded that Plaintiff submit his withdrawal from CMED.

202.    On or about April 23, 2018, after being discharged from CMED, constructively, or otherwise, Plaintiff applied for acceptance to the University of Medicine and Health Sciences, St. Kitts.

203.    However, Plaintiff's acceptance was negatively impacted by defamatory statements made by Defendant Tina Thompson to officials at the University of Medicine and Health Sciences, St. Kitts.

204.    Defendant Tina Thompson improperly and falsely informed officials at University of Medicine and Health Sciences that Plaintiff had failed courses that he in fact passed and that he struggled with the curriculum at CMU; that Plaintiff was forced to repeat Year 2 because of academic difficulty; and that Plaintiff was given a second chance and failed again.

205.    Based on information and belief, Defendant Thompson made other improper and false statements to officials at the University of Medicine and Health Sciences, St. Kitts.

206.     After the abovementioned defamatory statements were made, and as a result of them, Plaintiff was denied acceptance into the University of Medicine and Health Sciences, St. Kitts.

207.     Based on the foregoing, Defendants' discriminatory, retaliatory, defamatory and reckless actions and conduct toward Plaintiff, as set forth herein, were in violation of LCME rules and regulations and calculated, in part, to achieve accreditation.

## LEGAL CLAIMS

## COUNT I
## VIOLATION OF TITLE VI OF CIVIL RIGHTS ACT OF 1964

208.     Plaintiff incorporates the preceding paragraphs as fully set forth herein.

209.     Defendants CMU and CMED were recipients of federal funding at all relevant times complained of herein by Plaintiff.

210.     Defendants intentionally discriminated and retaliated against Plaintiff based on race, religion, color and national origin as set forth above and herein.

211.     Defendants' acts and failure to act as set forth above, including, but not limited to intentionally or unintentionally failing to follow its grading policies and practices, denial of accommodations, improper implementation of curriculum, racist and discriminatory comments, and harassing conduct, denied Plaintiff access, benefits, opportunities, services; or otherwise subjected him to unequal, disparate and/or adverse treatment because of his race, religion, color and/or national origin.

212.     As direct and proximate cause of Defendants' acts and failure to act, in violation of Title VI of the Civil Rights Act of 1964 Plaintiff suffered damages including, but not limited to, lost wages, benefits, loss of employment opportunities and loss of educational opportunities. In addition, Defendants' acts and/or failure to act has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, pain and suffering, loss of enjoyment of life, and other non-pecuniary losses.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. an award for damages as allowed for violation of Title VI of the Civil Rights Act of 1964;

6. any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

## COUNT II
## VIOLATION OF 42 USC §1983
## Substantive Due Process
## Fourteenth Amendment and First Amendment
## (*All Defendants*)

213. Plaintiff incorporates the preceding paragraphs as fully set forth herein.

214. Plaintiff had a property interest in his medical student position, medical degree and education, acquisition of useful knowledge, as established by the CMED and CMU policies and practices, and contract with Plaintiff.

215.    Defendants' actions as set forth herein deprives Plaintiff of his liberty interest in his reputation and chosen career, impaired his right to practice medicine in the United States and further deprived him of his liberty by destroying his good name and reputation in arbitrarily and capriciously subjecting Plaintiff to the stigma of expulsion.

216.    Defendants, state established and supported educational institutions and employees, acting under color of state law, arbitrarily and capriciously deprived Plaintiff of his degree and the aforementioned property and liberty interests in violation of his substantive due process rights under the Fourteenth and First Amendments.

217.    Plaintiff had a liberty interest in his reputation and chosen medical career, which Defendants deprived him medical student position, medical degree, education, acquisition of useful knowledge, as established by the CMED and CMU policies, guidelines, regulations and practices.

218.    Plaintiff had a First Amendment right and liberty interest in the expression and sharing of his comments, thoughts, beliefs and insights

regarding the conduct, actions and treatment of himself by Defendants, as set forth herein, including and not limited to Defendants DeSantis and Matte.

219.     Defendants CMU and CMED, in fact, encouraged, solicited and provide a platform and procedure for the exercise of Plaintiff's First Amendment rights in this regard, as set forth in its Student Handbook and policies, practices, guidelines and procedures.

220.     Defendants, state established and supported educational institutions and employees, acting under color of state law, arbitrarily and capriciously deprived Plaintiff of his degree and the aforementioned property and liberty interests in violation of his substantive due process rights under the Fourteenth and First Amendments.

221.     The actions of Defendants evidenced an intentionally malicious, reckless, wanton and deliberate indifference to Plaintiff's constitutional and federal law rights as set forth herein.

222.     As a direct and foreseeable consequence of Defendants' actions, Plaintiff was deprived of his rights under the Fourteenth and First

Amendments to the United States Constitution; suffered economic loss, emotional trauma and related impact on his health, loss of education and irreparable harm to his reputation, legal fees and costs.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. an award for damages as allowed for violation of 42 USC Section 1983;

6. any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

**COUNT III**
**VIOLATION OF 42 USC §1983**
**Violation of Plaintiff's Equal Protection Rights**
**(*All Defendants in their Official Capacity*)**

223.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

224.    Plaintiff had a right to fair and equal treatment under the law, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

225.    The Defendants intentionally singled out and treated Plaintiff less favorably than other similarly situated persons, without any rational basis for that treatment.

226.    In so doing, Defendants denied Plaintiff fair and equal treatment under the law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

227.    The Defendants promulgated and carried out the acts and omissions, official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard and deliberate indifference for the civil and constitutional rights, privileges and sensibilities of Plaintiff.

228.    As a direct and foreseeable consequence of Defendants' actions and omissions, Plaintiff was deprived of his right under the Fourteenth

Amendment to the United States Constitution to equal protection of law, and thereby suffered loss of reputation, economic damage and severe emotional injury.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. an award for damages as allowed for violation of 42 USC Section 1983;

6. any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

## COUNT IV
## VIOLATION OF 42 USC §1983
### Violation of Plaintiff's Fourteenth Amendment
### Due Process Rights – Conduct that Shocks the Conscience
### (*All Defendants in their Official Capacity*)

229.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

230.    Plaintiff had the right under the Fourteenth Amendment to be free from conduct that shocks the conscience, offending the canons of decency and fairness that express time tested notions of justice.

231.    In violation of this right, Defendants engaged in grossly abusive, indecent, coercive and humiliating conduct toward Plaintiff by refusing to allow him his awarded accommodation, manipulating his grades so as to fail him out of medical school, constantly coercing him to drop out of medical school, shaming and humiliating Plaintiff in front of his classmates, and other egregious, unprofessional, humiliating and indecent actions, omissions and conduct as set forth herein.

232.    Defendants promulgated and/or carried out the acts and omissions described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiff.

233.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of his rights under the Fourteenth Amendment to the United States Constitution, and thereby suffered loss of freedom, economic damages, loss of reputation and severe emotional injury.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. an award for damages as allowed for violation of 42 USC Section 1983;

6. any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

**COUNT V**
**VIOLATION OF 42 USC §1983**
**Violation of Plaintiff's Fourteenth Amendment**
**Procedural Due Process Rights**

Page 65 of 98

234.   Plaintiff incorporates the preceding paragraphs as fully set forth herein.

235.   Plaintiff was a medical student enrolled in Defendant CMED at all relevant times.

236.   At all relevant times herein, Defendants were acting under color of state law.

237.   Under the laws of the State of Michigan and United States, Plaintiff enjoyed a constitutionally protected property interest in his medical school education, as set forth herein, protected and guaranteed by the Fourteenth Amendment.

238.   At all relevant times, as set forth herein, acting under color of state law, Defendants, for purposes of retaliation, discrimination and harassment, deprived Plaintiff of his right to procedural due process.

239.   At all relevant times, as set forth herein, acting under color of state law, Defendants, for purposes of retaliation, discrimination and harassment,

deprived Plaintiff of his right to procedural due process by failing to adhere to its policies regarding SPCC hearings.

240. At all relevant times, as set forth herein, acting under color of state law, Defendants, for purposes of retaliation, discrimination and harassment, deprived Plaintiff of his right to procedural due process by failing to provide an impartial hearing panel and a tribunal free from conflicts of interests.

241. At all relevant times, as set forth herein, acting under color of state law, Defendants, for purposes of retaliation, discrimination and harassment, deprived Plaintiff of his right to procedural due process by failing to allow Plaintiff to question witnesses or otherwise present evidence in his defense.

242. At all relevant times, as set forth herein, acting under color of state law, Defendants, for purposes of retaliation, discrimination and harassment, deprived Plaintiff of his right to procedural due process by failing to allow Plaintiff representation by counsel.

243. As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of his rights under the Fourteenth Amendment to the

United States Constitution, and thereby suffered loss of freedom, economic

damages, loss of reputation and severe emotional injury.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level

   with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount

   to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be

   determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. an award for damages as allowed for violation of 42 USC Section 1983;

6. any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein and

   that it deems just and equitable.

## COUNT VI
## VIOLATION OF §504 OF THE REHABILITATION ACT OF 1973
## 29 USC §794

244.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

245.     At all relevant times, Plaintiff suffered from Major Depression, ADHD and anxiety disorder.

246.     Plaintiff is a "handicapped person" under 504 of the Rehabilitation Act of 1973.

247.     Plaintiff is otherwise qualified for participation in the medical school program at CMED.

248.     Plaintiff was excluded and dismissed from participation in the medical school program at CMED solely by reason of his handicap.

249.     Plaintiff was denied the benefits, services, opportunities, privileges and other things guaranteed him under the Rehabilitation Act of 1973 from Defendants CMU and CMED.

250.     Defendant CMED and CMU are recipient of federal financial assistance.

251.   As a direct and proximate cause of Defendants actions as herein alleged, Plaintiff was denied participation in the medical school program at CMED resulting in damages including, but not limited to, lost wages, benefits, loss of employment opportunities and loss of educational opportunities. In addition, Defendants' acts and/or failure to act has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, pain and suffering, loss of enjoyment of life, and other non-pecuniary losses.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1.  an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2.  an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3.  an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4.  an award to Plaintiff of attorney fees, costs of litigation, and interest

5.  an award for damages as allowed for violation of §504 Of The Rehabilitation Act of 1973, 29 USC §794;

6.  any other relief Plaintiff is entitled to under law;

7.  an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As to Individual Defendants)

252.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

253.    The amount in controversy exceeds $25,000.

254.    The conduct, actions and omissions of Defendants, as set forth above was extreme, outrageous and of such character as not to be tolerated by a civilized society.

255.    The conduct of Defendants as outlined above was intentional and reckless.

256.    The conduct of Defendants, as outlined above, was for an ulterior motive or purpose.

257.    Defendants' conduct resulted in severe and serious emotional distress.

258.    As a direct and proximate result of Defendants' conduct and actions Plaintiffs has suffered damages as set forth herein, including, but not limited to, loss of future income as a medical doctor; emotional distress; humiliation mortification and embarrassment; sleeplessness and anxiety; and other damages that may arise during the course of discovery and the course of this trial.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1.  an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2.  an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3.  an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4.  an award to Plaintiff of attorney fees, costs of litigation, and interest

5.  an award for damages as allowed for intentional infliction of emotional distress;

6.  any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein, and that it deems just and equitable.

## COUNT VIII
## NEGLIGENCE
### (As to all Individual Defendants)

259.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

260.    The amount in controversy exceeds $25,000.

261.    Defendants had a duty to abide by the applicable laws and policies, practices, guidelines and requirements of CMED and CMU, as outlined and set forth herein, for the benefit and protection of Plaintiff.

262.    Defendants had a duty to abide by the applicable laws and policies, practices, guidelines and requirements and standards for accreditation promulgated by LCME, as outlined and set forth herein, for the benefit and protection of Plaintiff.

263.     Defendants CMU and CMED, based on information and belief, are precluded by LCME from, inter alia, engaging in grade inflation, irregular

and discriminatory application of policies, guidelines, practices and procedures, and discrimination based on race, national origin and creed.

264. Defendants' conduct, actions and omissions violated various LCME Standards, including, but not limited to Standards 3, 6, 8, 9, 10, 11, and 12.

265. Defendants owed Plaintiff a duty to exercise reasonable care for his safety and wellbeing.

266. Defendants breached their duty and were negligent, as set forth herein, failing to adhere and follow their policies, practices, guidelines and requirements of CMED, CMU and LCME as they related to Plaintiff and applicable laws.

267. The acts or omission of Defendants were the proximate and direct cause of Plaintiff's damages and injuries.

268. Plaintiff suffered and sustained severe injuries, including, but not limited to, mental anguish, depression, economic loss, loss of future income as a medical doctor; emotional distress; humiliation mortification and

embarrassment; sleeplessness and anxiety; and other damages that may arise during the course of discovery and the course of this trial.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. an award for damages as allowed for negligence;

6. any other relief Plaintiff is entitled to under law;

7. an order of this court granting Plaintiff further relief as requested herein, and that it deems just and equitable.

## COUNT IX
## GROSS NEGLIGENCE pursuant to MCL 691.1407(2)
### (*as to Individual Defendants*)

269.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

270.     The amount in controversy exceeds $25,000.

271.     Defendants had a duty to abide by the applicable laws and policies, practices, guidelines and requirements of CMED, CMU and LCME, as outlined and set forth herein, for the benefit and protection of Plaintiff.

272.     Defendants, based on information and belief, are precluded by LCME from, inter alia, engaging in grade inflation, irregular and discriminatory application of policies, guidelines, practices and procedures, and discrimination based on race, national origin and creed.

273.     Defendants' conduct, actions and omissions violated various LCME Standards, including, but not limited to Standards 3, 6, 8, 9, 10, 11, and 12.

274.     Defendants owed Plaintiff a duty to follow established and articulated procedures regarding the conduct of hearings, and policies related to grading, curriculum implementation, hearing and other obligations and requirements as set forth in the Student Handbook.

275.     Defendants owed Plaintiff a duty to exercise reasonable care for his safety and wellbeing.

276.     Defendants breached their duty and were grossly negligent, as set forth herein, failing to adhere and follow their policies, practices, guidelines and requirements of CMED, CMU and LCME as they related to Plaintiff, and applicable laws.

277.     Defendants' conduct was in violation of the federal and state laws referenced herein, including but not limited to, Const. 1963, art 1, §2, 42 U.S.C. §1983; U.S. Const. 14th Amendment, and Title VI of the 1964 Civil Right Act.

278.     The conduct and behavior of Defendants as set forth herein were not expressly or impliedly mandated or authorized by law.

279.     Defendants' actions and conduct were so reckless, as to demonstrate a substantial lack of concern for whether injury would result.

280.    Defendants were not acting in the scope of their authority, nor reasonably believed that they were doing so.

281.    Defendants and/or CMU and CMED, were not engaged in the exercise or discharge of a governmental function,

282.    Defendants' grossly negligent conduct and actions were the proximate cause of injury and damage to Plaintiff.

283.    The acts or omission of Defendants were the proximate and direct cause of Plaintiff's damages and injuries.

284.    As a direct and proximate cause of Defendants' violations of Plaintiffs' rights as set forth herein, including, but not limited to, the Michigan Constitution, Federal Constitution, Federal statutes and this ultra vires activity, Plaintiff was embarrassed, humiliated and suffers from mental anguish, depression, economic loss, loss of future income as a medical doctor; emotional distress; humiliation, mortification and embarrassment; sleeplessness and anxiety; and other damages that may arise during the course of discovery and the course of this trial.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter;

4. an award to Plaintiff of attorney fees, costs of litigation, and interest

5. any other relief Plaintiff is entitled to under law;

6. an order of this court granting Plaintiff further relief as requested herein, and that it deems just and equitable.

## COUNT X
## VIOLATION OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

285. Plaintiff incorporates the preceding paragraphs as fully set forth herein.

286. Plaintiff is resident of Michigan and was enrolled as a medical student at CMED at all relevant times.

287.    Defendant CMED/CMU is a publically funded *educational institution* as that term is defined in *MCL 37.1401* and is located in Isabella County, City of Mount Pleasant, State of Michigan.

288.    Plaintiff claims damages in excess of $25,000 and requests injunctive relief.

289.     Plaintiff is a person with a *disability* as that term is defined in the Persons with Disabilities Civil Rights Act because he has a determinable physical characteristic, as set forth above and herein, that substantially limits one or more of his life activities and is unrelated to his ability to use and benefit from educational activities, programs, and facilities at an educational institution.

290.    Among other disabilities listed herein, Plaintiff has difficulty focusing and concentrating, as a result of his disabilities.

291.    Plaintiff applied for admission into the medical school program at CMED and was accepted into the program.

292.    Plaintiff is and was qualified for the medical school program, and his disabilities are unrelated to his ability to use and benefit from the medical school program at Defendant CMED/CMU.

293.    Defendants' reasons for demanding and forcing Plaintiff to withdraw from the medical school program was because of his purported deficient grades. However, Defendants' failure to provide the accommodation granted to Plaintiff resulted in his deficient grades.

294.    Defendants denied Plaintiff continued enrollment and matriculation in the medical school program because of his disabilities.

295.    Plaintiff was granted an accommodation for his disabilities by CMED and CMU, but Defendants failed and refused to provide and or adequately provide the awarded and necessary accommodation, resulting in Plaintiff being forced to withdraw from his medical school program.

296.    Defendant has denied Plaintiff equal opportunity.

297.     Defendants' conduct, behavior, actions and omission as set forth herein were in violation of *MCL 37.1402(a), (b)* and *(f)*.

298.     Pursuant to *MCL 37.1402*, Defendant CMED/CMU is prohibited from denying Plaintiff admission and continued enrollment to the medical school program because of his disabilities.

299.     As a direct and proximate result of Defendant CMED/CMU's unlawful discrimination, Plaintiff has been damaged in an amount exceeding $25,000.

300.     Plaintiff will be irreparably harmed if he is not granted injunctive relief along with monetary damages.

301.     As a direct and proximate result of Defendants' behavior, conduct, acts and/or omissions, Plaintiff suffered damages and injuries, including, but not limited to, mental anguish, depression, economic loss, loss of future income as a medical doctor; emotional distress; humiliation, mortification and embarrassment; sleeplessness and anxiety; and other damages that may arise during the course of discovery and the course of this trial.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1. an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2. an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3. issue a preliminary injunction requiring Defendant CMED/CMU to grant him readmission into the medical school program at the proper cohort level.

4. grant Plaintiff damages in an amount to be decided at trial plus costs and attorney fees as permitted under the Persons with Disabilities Civil Rights Act and other relief and damages allowed thereunder;

5. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

## COUNT XI
## VIOLATION OF MCL 37.2402 (ELLIOT LARSEN CIVIL RIGHTS ACT)

302.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

303.    Plaintiff is a resident citizen of the State of Michigan.

304.    Defendant CMED/CMU is an *educational institution* as defined in *Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2401* and is located in Isabella County, City of Mount Pleasant, State of Michigan.

305.    Defendant CMED/CMU is a *place of public accommodation* and a *public service*, as defined in *Michigan's Elliott-Larsen Civil Rights Act* (the Act), MCL 37.2301.

306.    The individual Defendants are persons as defined in MCL 37.2103(g)

307.    Plaintiff was enrolled in Defendant CMED/CMU's medical program at all relevant times.

308.    Defendants' actions, omissions, behavior and conduct, as set forth herein, were in violation of *MCL 37.2402 (a)* and *(b)*.

309.    Defendants discriminated against Plaintiff, as set forth above and herein, in the full utilization of and benefit from CMED/CMU medical school's services, programs and activities, based on his race, religion, national origin and color.

310.    Defendants retaliated against Plaintiff, as set forth above and herein, in the full utilization of and benefit from CMED/CMU medical school's services, programs and activities, based on his race, religion, national origin and color.

311.    Defendants violated the *Michigan's Elliott-Larsen Civil Rights Act* and deprived Plaintiff of his civil rights, among other things,

   a. subjecting Plaintiff, because of his national origin, color, race and religion, to offensive conduct and communications of a discriminatory and retaliatory nature, which had the purpose and/or effect of denying him the full benefit of the educational program of CMED/CMU and full and equal access to the use and privileges of public accommodations, public services and educational opportunity and;

   b. allowing and/or failing to stop retaliation, harassment and discrimination of Plaintiff by employees and agents under the control of Defendant CMED/CMU, which acts and omissions were in

retaliation for Plaintiff having asserted his right not to be subjected to this kind of activity.

312.    Plaintiff claims damages in excess of $25,000 and requests injunctive relief.

313.    As a direct and proximate cause of Defendants' actions, omissions, conduct and behavior as set forth herein, Plaintiff suffered damages and injuries, including, but not limited to, mental anguish, depression, economic loss, loss of future income as a medical doctor; emotional distress; humiliation, mortification and embarrassment; sleeplessness and anxiety; and other damages that may arise during the course of discovery and the course of this trial.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1.  an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2.  an order of this court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter;

3.  issue a preliminary injunction requiring Defendant CMED/CMU to grant him readmission into the medical school program at the proper cohort level.

4. grant Plaintiff damages in an amount to be decided at trial plus costs and attorney fees as permitted under the Elliot Larsen Civil Rights Act;

5. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

## COUNT XII
## DEFAMATION (Libel)
## (As against Defendant Thompson)

314.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

315.    After being forced out of CMED Plaintiff sought admission to University of Medicine and Health Sciences, St. Kitts, and requested a letter from Defendant Thompson to assist in his admission to the University of Medicine and Health Sciences, St. Kitts.

316.    Plaintiff requested a copy of the letter or the opportunity to review the letter prior to its submission to the admission committee for University of Medicine and Health Sciences, St. Kitts, and was denied by Defendant Thompson.

317.    Instead of writing a letter of support as promised, and requested by Plaintiff, Defendant Thompson submitted a defamatory letter containing false information.

318.    Plaintiff became aware of some of the content of the letter during his interview for admission to University of Medicine and Health Sciences, St. Kitts.

319.    Based on information and belief, the letter submitted by Defendant Thompson made false accusations that Plaintiff failed courses that he, in fact, had passed, and stated Plaintiff had a history at CMED of bad grades and academic difficulty, among other defamatory statements believed to have been contained within the letter.

320.    Defendant Thompson published the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.

321.    The publication was not privileged.

322.     Defendant's accusations were defamation per se.

323.     The publication of these remarks has resulted in damage to Plaintiff's reputation in the community and economic loss, including, but not limited to, the following:

    a.  loss of income, the time value of money, and revenue from chosen profession from the date that the he would have graduated medical school through the present and into the future

    b.  emotional distress

    c.  humiliation, mortification, and embarrassment

    d.  sleeplessness and anxiety

    e.  other damages that may arise during the course of discovery and the course of this trial.

PLAINTIFF REQUESTS relief from this court against Defendants as follows:

1.  an order of this court reinstating Plaintiff to an appropriate grade/cohort level with Defendant CMED;

2.  an order of this court awarding Plaintiff compensatory and punitive damages in an amount to be determined at trial in this matter;

3.  issue a preliminary injunction requiring Defendant CMED/CMU to grant him readmission into the medical school program at the proper cohort level.

4. grant Plaintiff damages in an amount to be decided at trial plus costs and attorney fees as permitted under applicable law;

5. an order of this court granting Plaintiff further relief as requested herein and that it deems just and equitable.

## COUNT XIII
## BREACH OF CONTRACT
### (As to Defendants CMED and CMU)

324.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

325.    As a condition of enrollment into the CMED was required to and did execute a contract with Defendant CMED/CMU (*Exhibit A, Student Handbook*).

326.    In consideration for the medical school education sought by Plaintiff from Defendants and provided to Plaintiff by Defendants, Plaintiff annually paid Defendants in the form of tuition.

327.    Pursuant to the contract between the parties, Defendants were required to, inter alia, follow and implement certain policies for the benefit of Plaintiff as it relates to fidelity to and consistent application of it grading policy,

curriculum practices, examination and reexaminations policies, responsibilities in the teacher/learner relationship, student promotion review and remediation policies and practices, accommodations in assessments for students with disabilities policies and guidelines, academic records policies and practices and academic assistance policies and guidelines, SPCC process and procedure, as set forth in the preceding paragraphs and documented in the relevant Student Handbook and CMED/CMU policies, practices, guidelines and accreditation requirements, responsibilities and guidelines.

328.    Defendants breached the aforementioned contract, in the manner set forth herein, including but limited to, as set forth herein, by failing to fulfill its fidelity to and consistent application of it grading policy, curriculum practices, examination and reexaminations policies, responsibilities in the teacher/learner relationship, student promotion review and remediation policies and practices, accommodations in assessments for students with disabilities policies and guidelines, academic records policies and practices and academic assistance policies and guidelines, as set forth in the preceding paragraphs and documented in the relevant Student Handbook and CMED/CMU policies, practices, guidelines and accreditation requirements, responsibilities and guidelines.

329.    As a result of Defendants' breach, Plaintiff has suffered substantial economic losses, emotional distress and anxiety, consequential and incidental damages, including attorney fees and costs.

PLAINTIFF REQUESTS that this court enter a judgment in his favor and against Defendants and award the following damages:

1.  compensatory damages in an amount that is in excess of $25,000 and that is sufficient to compensate Plaintiff for his actual, consequential, and incidental losses sustained as a result of Defendant's wrongful actions;

2.  economic damages in an amount equal to the cost expended by Plaintiff in pursuit of his medical school education, including, but not limited to in the tuition, fees, books and supplies.

3.  exemplary damages in an amount in excess of $25,000 resulting from Defendant's intentional and malicious actions;

4.  interest, costs, and reasonable attorney fees.

**COUNT XIV**
**FRAUDULENT MISREPRESENTATION**
**(As to Defendants CMED and CMU and their Agents)**

330.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

331.    Defendants intentionally made false representations of material facts to Plaintiff regarding fidelity to and consistent application of it grading policy, curriculum practices, examination and reexaminations policies, responsibilities in the teacher/learner relationship, student promotion review and remediation policies and practices, accommodations in assessments for students with disabilities policies and guidelines, academic records policies and practices and academic assistance policies and guidelines, as set forth in the preceding paragraphs and documented in the relevant Student Handbook and CMED/CMU policies, practices, guidelines and accreditation requirements, responsibilities and guidelines.

332.    Defendants' representations were false when they were made.

333.    Defendants knew that its representations were false when they were made or it made them recklessly, without knowing whether they were true.

334.    Defendants intended that Plaintiff rely on the representations.

335.    Plaintiff relied on Defendants' false representations in enrolling and

funding his medical school education with Defendants CMED and CMU

336.    As a result of Defendants' fraudulent misrepresentations, Plaintiff has

suffered substantial economic losses.

337.    Defendants' representations were made intentionally and maliciously

and have caused Plaintiff to suffer humiliation, outrage, and indignation.

PLAINTIFF REQUESTS that this court enter a judgment in his favor and against

Defendants and award the following damages:

1.  compensatory damages in an amount that is in excess of $25,000 and that is

    sufficient to compensate Plaintiff for his actual, consequential, and incidental

    losses sustained as a result of Defendant's wrongful actions;

2.  economic damages in an amount equal to the cost expended by Plaintiff in

    pursuit of his medical school education, including, but not limited to in the

    tuition, fees, books and supplies.

3.  exemplary damages in an amount in excess of $25,000 resulting from

    Defendant's intentional and malicious actions;

4.  interest, costs, and reasonable attorney fees.

## COUNT XV
## INNOCENT MISREPRESENTATION
### (As to Defendants CMED and CMU and their Agents)

338.    Plaintiff incorporates the preceding paragraphs as fully set forth herein.

339.    Defendants' representations, as set forth in the preceding paragraphs, were made in connection with the making of a contract between Plaintiff and Defendants.

340.    Plaintiff would not have entered into the contract for acceptance into the CMED medical school program if Defendant had not made the representations.

341.    Plaintiff suffered substantial economic losses as a result of entering into the contract, and his losses benefited Defendant.

342.    Defendant's representations were made intentionally and maliciously and have caused Plaintiff to suffer humiliation, outrage, and indignation.

PLAINTIFF REQUESTS that this court enter a judgment in his favor and against Defendants and award the following damages:

1. compensatory damages in an amount that is in excess of $25,000 and that is sufficient to compensate Plaintiff for his actual, consequential, and incidental losses sustained as a result of Defendant's wrongful actions;

2. economic damages in an amount equal to the cost expended by Plaintiff in pursuit of his medical school education, including, but not limited to in the tuition, fees, books and supplies.

3. exemplary damages in an amount in excess of $25,000 resulting from Defendant's intentional and malicious actions;

4. interest, costs, and reasonable attorney fees.

**WHEREFORE,** PLAINTIFF REQUESTS that this court enter judgment against Defendants for an amount in excess of $75,000.00 for each federal claim and $25,000 for each state claim, and in whatever amount is fair, just, and equitable for the injuries and damages so wrongfully sustained by the Plaintiff, including but not limited to all compensatory damages, interest, costs and attorney fees, and other damages as allowed in law or equity.

Respectfully submitted,

HALL MAKLED, P.C.
*Attorneys for Plaintiff*

/s/ *Cyril C. Hall*
Cyril C. Hall (P29121)

/s/ Lamont D. Satchel
Lamont D. Satchel (P52647)
23756 Michigan Avenue, Ste. 300
Dearborn, Michigan 48124
(313) 788-8888 (Office)
(313) 582-7962 (Fax)
Cyrilhalllaw@sbcglobal.net
DATED: January 31, 2019       Satchel@hallmakled.com

## PLAINTIFF'S JURY DEMAND

Plaintiff, Vincent Berry, by and through his attorneys, demands a trial by jury of all the issues in this case.

Respectfully submitted,

HALL MAKLED, P.C.
*Attorneys for Plaintiff*

/s/ *Cyril C. Hall*
Cyril C. Hall (P29121)

/s/ Lamont D. Satchel
Lamont D. Satchel (P52647)
23756 Michigan Avenue, Ste. 300
Dearborn, Michigan 48124
(313) 788-8888 (Office)
(313) 582-7962 (Fax)
Cyrilhalllaw@sbcglobal.net
DATED: January 31, 2019          Satchel@hallmakled.com