UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**VINCENT BERRY**,

     Plaintiff,

v

**CENTRAL MICHIGAN UNIVERSITY,
CENTRAL MICHIGAN UNIVERSITY
MEDICAL SCHOOL, MARK DESANTIS,
MARIE C. MATTE, BRIAN SLENSKI,
TINA THOMPSON, LINDA PERKOWSKI,
DANIEL GRIFFIN, MARC SPENCER, JAMIE
ALAN, ROBERT PETERSON, JULLIEN
ROSSIGNOL, SANDRA HOWELL,** and
**GEORGE KIKANO**,

     Defendants.

Case No. 2:19-cv-10306-TGB-SDD

Hon.   Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

---

| | |
|---|---|
| Cyril C. Hall (P29121) | Michael E. Cavanaugh (P11744) |
| Lamont D. Satchel (P52647) | Ryan K. Kauffman (P65357) |
| Hall Makled, P.C. | Fraser Trebilcock Davis & Dunlap, P.C. |
| At0torneys for Plaintiff | Attorneys for Defendants |
| 23756 Michigan Avenue | 124 W. Allegan, Suite 1000 |
| Suite 300 | Lansing, MI  48933 |
| Dearborn, MI 48124 | (517) 482-5800 |
| (313) 788-8888 | mcavanaugh@fraserlawfirm.com |
| Cyrilhalllaw@sbcglobal.net | rkauffman@fraserlawfirm.com |
| satchel@hallmakled.com | |

---

## DEFENDANTS HOWELL, SLENSKI AND KIKANO'S
## MOTION TO DISMISS

NOW COME Defendants Dr. Sandra Howell, Brian Slenski, and Dr. George Kikano, by and through their attorneys Fraser Trebilcock Davis & Dunlap, P.C., and for their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) state as follows:

1.     The Defendants in this matter have contemporaneously filed various motions to dismiss.  For a better understanding of these various motions, Dr. Howell, Mr. Slenski or Dr. Kikano respectfully suggest that the Court review their motion first.

2.     Pursuant to Fed. R. Civ. P. 12(b)(6), a party may assert by motion the defense that the plaintiff has failed to state a claim upon which relief can be granted.

3.     For the reasons discussed in greater detail in the brief supporting this motion, which are incorporated herein by reference, Plaintiff Vincent Berry has failed to state a claim against Dr. Howell, Mr. Slenski or Dr. Kikano upon which relief can be granted.   Accordingly, these three Defendants should be dismissed as parties from this lawsuit with prejudice.

4.     Defendants, through their undersigned attorney, conferred, primarily through e-mail communication during the period of April 30, 2019 through May 15, 2019, with Plaintiff's attorney to seek concurrence from Plaintiff's attorney in this motion as required by E.D. Mich. L.R. 7.1(a). Copies of the e-mail communications are attached hereto as Exhibit A.  However, after Defendants' attorney explained the nature of this motion, its legal basis, and the equitable relief sought, concurrence was denied.

WHEREFORE, Defendants Dr. Sandra Howell, Brian Slenski, and Dr. George Kikano respectfully request that this Honorable Court GRANT their Motion

to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and enter an order that dismisses them with prejudice from this lawsuit.

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: May 16, 2019          By: */s/ Michael E. Cavanaugh*
                                 Michael E. Cavanaugh (P11744)
                                 Ryan K. Kauffman (P65357)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Cyril Hall served electronically.

*/s/ Michael E. Cavanaugh*
Michael E. Cavanaugh (P11744)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VINCENT BERRY**,

     Plaintiff,

Case No. 2:19-cv-10306-TGB-SDD

v

Hon.  Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

**CENTRAL MICHIGAN UNIVERSITY,
CENTRAL MICHIGAN UNIVERSITY
MEDICAL SCHOOL, MARK DESANTIS,
MARIE C. MATTE, BRIAN SLENSKI,
TINA THOMPSON, LINDA PERKOWSKI,
DANIEL GRIFFIN, MARC SPENCER, JAMIE
ALAN, ROBERT PETERSON, JULLIEN
ROSSIGNOL, SANDRA HOWELL,** and
**GEORGE KIKANO**,

     Defendants.

---

Cyril C. Hall (P29121)
Lamont D. Satchel (P52647)
Hall Makled, P.C.
Attorneys for Plaintiff
23756 Michigan Avenue
Suite 300
Dearborn, MI 48124
(313) 788-8888
Cyrilhalllaw@sbcglobal.net
satchel@hallmakled.com

Michael E. Cavanaugh (P11744)
Ryan K. Kauffman (P65357)
Fraser Trebilcock Davis & Dunlap, P.C.
Attorneys for Defendants
124 W. Allegan, Suite 1000
Lansing, MI  48933
(517) 482-5800
mcavanaugh@fraserlawfirm.com
rkauffman@fraserlawfirm.com

---

# DEFENDANTS HOWELL, SLENSKI AND KIKANO'S
# BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Fraser Trebilcock LAWYERS

## **TABLE OF CONTENTS**

LIST OF AUTHORITIES..........................................................................ii

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS .........................................................................2

STANDARD OF REVIEW .......................................................................8

LEGAL ARGUMENT..............................................................................9

     I.     SANDRA HOWELL SHOULD BE DISMISSED AS A PARTY...............................................................................10

     II.    BRIAN SLENSKI SHOULD BE DISMISSED AS A PARTY.........10

     III.   GEORGE KIKANO SHOULD BE DISMISSED AS A PARTY. ....................................................................................14

     IV.   THE REFERENCES IN THE COMPLAINT TO "DEFENDANTS" GENERALLY DO NOT ASSERT ANY CLAIM AGAINST THESE THREE INDIVIDUAL DEFENDANTS...................................................................16

CONCLUSION......................................................................................18

i

# LIST OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 566 U.S. 662; 129 S. Ct. 1937; 173 L.Ed.2d 868 (2009) .......9, 17

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007)........................................................................................8, 9, 13, 17

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007) ...............................................................................................12

*Conley v. Gibson*, 355 U.S. 41; 78 S.Ct. 99; 2 L.Ed.2d 80 (1957)............................8

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)......15

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556 (6th Cir. 2011) ................................................................................................17

*HMS Prop Mgmt. Grp. Inc. v. Mille*, 69 F.3d 537 (Table) Nos. 94-3668, 94-3669. 1995 WL 641308, at *3 (6th Cir. Oct 31, 1995) ...................................13

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996) .......................17

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214; 106 S.Ct. 507 (1985)...........................................................................................................1

*Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349 (6th Cir. 2015)..........2

*Swierkiwica v. Sorema, N.A.*, 534 U.S. 506; 122 S.Ct 992 (2002)..........................12

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997)...............................................12

**Statutes**

29 U.S.C. §794(a) ....................................................................................................7

42 U.S.C. §1983 ......................................................................................................17

**Rules**

Fed. R. Civ. P. 10(c) ..............................................................................................12

FED. R. CIV. P. 12(b)(6)..................................................................................2, 8, 14, 16

Fed. R. Civ. P. 8 .......................................................................................................17

## <u>INTRODUCTION</u>

Plaintiff Vincent Berry was formerly enrolled in medical school at Central Michigan University ("CMU") College of Medicine.  Plaintiff withdrew from the program in March, 2018, in lieu of accepting an academic dismissal, after he failed **<u>five</u>** different courses in a little more than one year.  Plaintiff was given numerous opportunities to remedy his failing grades through various remediation efforts and appeals.  However, after extensive due process and careful deliberation, it was ultimately determined that Plaintiff had failed to satisfy the academic requirements of CMU's medical school program.

As the United States Supreme Court recognized more than three decades ago, "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225; 106 S.Ct. 507 (1985).  "Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id*.  This reluctance to intervene in academic decisions is especially important with regard to degree requirements in the health care field where students will enter into "a profession whose practitioners are entrusted with life and death decisions." *Shaikh*

*v. Lincoln Memorial University*, 608 Fed. Appx. 349, 353 (6th Cir. 2015) (citations omitted).

In bringing the present lawsuit, Plaintiff attempts to overcome this heavy burden by challenging nearly every single academic decision during the entire time that he was enrolled in the College of Medicine.  Plaintiff tries to couch these academic challenges as alleged violations of his constitutional and civil rights, and in doing so, takes a needlessly expansive approach: he asserts fifteen (15) separate counts in three hundred forty-two (342) paragraphs against thirteen (13) different Defendants.

In drafting this overly-inclusive Complaint, however, Plaintiff has inexplicably named three individuals as Defendants without bothering to include factual allegations to show that any of them took **any** action at all with regard to Plaintiff, much less that they engaged in some wrongful conduct.  Accordingly, as to these three Defendants – Sandra Howell, Brian Slenski, and George Kikano – the Court should grant the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss them from this lawsuit with prejudice.

## STATEMENT OF FACTS

The following facts are taken from the Complaint.  By restating the facts as pleaded by Plaintiff, Defendants are not admitting to any allegation.  In fact, Defendants contend that many of the allegations in the Complaint are untrue.

Nevertheless, they recognize that for purposes of the present motion, the Court will accept all well-pleaded facts as true.

Plaintiff began taking classes in the CMU College of Medicine during the 2015 Fall Semester, and he ultimately passed all of his classes the first year. (PageID#12-14, ¶¶ 52, 55-56). Thereafter, in the 2016 Fall Semester, Plaintiff began his second year of medical school. (PageID#20, ¶77). One of the courses that Plaintiff took that semester was Neuroscience and Behavior ("NBS"), which began on September 1, 2016, and concluded on October 24, 2016. (*Id.*, see also PageID#22, ¶83). The NBS course included three separate components: a didactic portion, an anatomy lab portion, and a team-based learning portion. (PageID#21, ¶79).

At the end of the NBS course, Plaintiff's combined score for the three portions of the NBS course was 69%, which was a failing grade.[1]  (PageID#21, ¶79). Plaintiff scored exceptionally poorly on the anatomy lab portion of the course by achieving a grade of only **36%**. (*Id.*) There is no allegation in the Complaint that any other student in Plaintiff's cohort failed the NBS course.

On October 25, 2016, Plaintiff met with Dr. Marie Catherine Matte, the Associate Dean for Compliance, Assessment and Evaluation, to discuss his failing grade in the NBS course. (PageID#3, ¶7 and PageID#22, ¶84). At the meeting, Dr.

---

[1] Students were required to achieve 70% for a passing grade.

3

Matte presented Plaintiff with three options to remedy the grade: (1) appeal the course grade; (2) retake the final exam; or (3) remediate the course over the upcoming winter break.  (PageID#22, ¶84).  Although choosing to remediate the course over winter break would have given Plaintiff more than two months to study and prepare, Plaintiff instead chose to retake the final exam.[2]  (PageID#22-23, ¶85). Because Plaintiff chose to retake the NBS final exam, rather than to remediate the course over winter break, the retake exam was scheduled to occur while Plaintiff was taking another course, Gastrointestinal ("GI"), which began near the end of October, and continued through early December, 2016.  (PageID#25, ¶96 and PageID#31, ¶119).  Plaintiff then took the NBS retake exam in early November, 2016, and once again failed to obtain a passing grade.  (PageID#28, ¶104).

After Plaintiff failed the NBS retake exam, he was offered yet another opportunity to remediate the course by taking a remediation exam.  (PageID#30, ¶114).  Plaintiff was again offered the opportunity to take the remediation exam at the end of winter break (in early January, 2017), which would have given Plaintiff additional time to study and prepare and which would have allowed him to better focus on his on-going GI course; however, Plaintiff instead chose to take the

---

[2] Plaintiff apparently chose not to remediate the NBS course during winter break because he did not want to give up his vacation plans.  In a nod to this fact, the Complaint alleges that "winter break (M2 Holiday Break)" was "a known period of time-off for students following a Fall Semester."  (PageID#22, ¶84).

remediation exam *before* winter break.  Accordingly, the NBS remediation exam was scheduled for December 8, 2016, and occurred the same week as Plaintiff's final exam in his GI course.  (PageID#31, ¶119).

Ultimately, Plaintiff failed the NBS remediation exam (with a score of 52.5%).  (PageID#32, ¶120).  In addition, Plaintiff also failed the GI course.  (PageID#33, ¶124).  However, rather than accepting responsibility for his own academic shortcomings, Plaintiff instead claims that he is blameless.  Plaintiff insists that the entire process surrounding the NBS retake and remediation exams, as well as his subsequent failure in the GI course, violated some unidentified and vaguely-described CMU policy.  (PageID#15-33, ¶¶62, 87, 89, 114, 120, 122, 123).

In any event, after failing to successfully remediate NBS, and then failing his GI course, Plaintiff was allowed to take an appeal with Dr. Linda Perkowski, the Year 1-2 Director.[3]  (PageID#34, ¶127).  After her review, however, Dr. Perkowski denied Plaintiff's appeal.  (*Id.*)  At that point, Plaintiff was not allowed to go any further with his medical school education or to continue with his matriculation into the next semester.  (PageID#34-35, ¶¶130-132).

Yet, Plaintiff was still not academically dismissed.  Instead, Plaintiff was given the opportunity to appear before the Student Performance and Conduct

---

[3] Plaintiff alleges that Dr. Perkowski was the "Year 1-2 Director," but she was a Senior Associate Dean.

Committee ("SPCC") on January 23, 2017.  (PageID#35-36, ¶¶132-133).  Although the SPCC could have dismissed Plaintiff from the medical school program because he had failed two classes in one semester, the SPCC instead decided that Plaintiff would be allowed to repeat his second-year of medical school.  (PageID#35-36, ¶¶132-133).

Surprisingly, however, Plaintiff even finds fault with that decision.  Plaintiff claims that rather than repeating the second year, he instead should have been allowed to continue to matriculate through the program with his cohort notwithstanding the fact that he just failed two courses. (PageID#36, ¶134).  Plaintiff alleges that he should have never been required to appear before the SPCC in the first place because Dr. Perkowski should have decided the appeal in his favor, and deemed him to have passed both the NBS and GI courses.  (PageID#34, ¶127).

Thereafter, in the Fall of 2017, Plaintiff resumed his medical school education by repeating his second-year classes.  (PageID#40, ¶150).  Plaintiff again took NBS during the first half of the semester, and he failed that course for a **second** time. (PageID#42, ¶¶158-159).  Thereafter, on October 24, 2017, Plaintiff was advised by Dr. Jamie Alan that he should not return for the remainder of the semester. (PageID#43, ¶160).  However, that decision was set aside, and Plaintiff was given another opportunity, and he was allowed to continue.   As such, Plaintiff was permitted to retake the GI course.  (PageID#50, ¶185).

In the meantime, on or about November 14, 2017, Plaintiff appealed his second failing grade in the NBS course to Dr. Daniel Griffin. (PageID#47, ¶177). Dr. Griffin, however, denied Plaintiff's appeal. (PageID#49, ¶179). During the time that Plaintiff's appeal with Dr. Griffin was pending, Plaintiff also failed the GI course for the second time. (PageID#50, ¶185).

In addition, Plaintiff claims that after he failed the NBS course for the second time, but before he failed the GI course for the second time, he began to experience uncontrollable anxiety and panic attacks. (PageID#43, ¶161). Consequently, Plaintiff sought and obtained an accommodation from CMU, which included a 1.5 time extension for taking exams and the ability to take exams in a quiet setting. (PageID#45, ¶166). Plaintiff admits that he was given the time extension for his GI final exam, but he complains that the room in which he took the exam was somehow not quiet enough.[4] (PageID#48, ¶178).

Because Plaintiff failed two classes during his attempt to repeat the second year, NBS and GI (*i.e.*, the same two classes that he failed the first time that he matriculated through Year 2 of the curriculum), Plaintiff was subject to academic dismissal. Accordingly, in early 2018, Plaintiff again appeared before the SPCC.

---

[4] These allegations, together with the most vague allegations of national-origin discrimination, appear to be the primary thrust behind Plaintiff's lawsuit. At least these allegations appear to be the basis of Plaintiff's Title VI and §504 claims. It is nearly impossible to discern which  factual allegations Plaintiff relies upon in support of his other claims.

(PageID#49, ¶181).   This time, the SPCC determined that Plaintiff should be dismissed from the medical school program rather than be given further chances to pass his second-year courses.  (PageID#50, ¶184).

However, Plaintiff's academic dismissal was **still** not final.  Instead, an *ad hoc* committee set up by Dr. Tina Thompson, the Dean of the College of Medicine, overturned the SPCC decision and offered Plaintiff one more opportunity to remediate the NBS and GI courses, as long as he did so by the end of the academic year.  (PageID#50, ¶185).  As such, Plaintiff continued in the program by taking Hematology Oncology during the 2018 Spring Semester.  (PageID#51, ¶186).  That course was completed in March, 2018, with Plaintiff once again failing to achieve a passing grade.  (PageID#51, ¶187).  Plaintiff's failure to pass Hematology Oncology was the **fifth** class that Plaintiff had failed in a little more than one year.  At that point, Plaintiff finally withdrew from the College of Medicine.  (PageID#54-55, ¶201).

## **STANDARD OF REVIEW**

The pleading standard necessary to survive a FED. R. CIV. P. 12(b)(6) motion is set forth in *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007).  In *Twombly*, the Supreme Court repudiated the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41; 78 S.Ct. 99; 2 L.Ed.2d 80 (1957), holding that Rule 12(b)(6) requires the Plaintiff to provide more "than labels and

conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

Stated otherwise, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678; 129 S. Ct. 1937; 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S., at 570, 127 S.Ct. 1955). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 566 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id*. Where the well-pleaded facts do not permit the Court to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id*. at 679.

## **LEGAL ARGUMENT**

Taking Plaintiff's allegations as true, there are at least three individual Defendants against whom no claim has been asserted: (1) Sandra Howell, (2) Brian Slenski and (3) George Kikano. For these three individuals, the Complaint provides no basis for naming them as Defendants. In fact, the Complaint fails to show how

these three individuals were involved in making any of the academic decisions that impacted Plaintiff.  According, as explained in greater detail below, the Court should grant the Motion to Dismiss with regard to these three Defendants and dismiss them as parties to this lawsuit.[5]

## I.  SANDRA HOWELL SHOULD BE DISMISSED AS A PARTY.

Sandra Howell's name appears exactly **once** in the entire Complaint at Paragraph 16, in which Plaintiff contends that Dr. Howell was, at all relevant times, "a citizen of the State of Michigan and an employee of Defendants CMU and CMED."  (Doc. 1, PageID#5, ¶ 16).  Nowhere else is Dr. Howell even mentioned.  Without analyzing each count in the Complaint separately, it is sufficient to state that being "a citizen of the State of Michigan" and "an employee" of CMU does not satisfy the elements of any cognizable cause of action.   Dr. Howell should be dismissed.[6]

## II.  BRIAN SLENSKI SHOULD BE DISMISSED AS A PARTY.

The Motion to Dismiss should be also grated in favor of Brian Slenski.

---

[5] By bringing this motion on the issues presented, the individual Defendants named herein do not waive, and expressly reserve, their right to assert other defenses and, if necessary, to make further arguments at a later time regarding those defenses, including but not limited to qualified immunity, governmental immunity, and sovereign immunity.

[6] Although there are no allegations directed at Dr. Howell, she specifically incorporates the qualified immunity arguments made below in Section IV.  *See Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011).

According to the Complaint, Brian Slenski is the Assistant Registrar at CMU. (PageID#3, ¶9).  Plaintiff alleges that on January 14, 2017, which was shortly before Plaintiff's first appearance before the SPCC, Plaintiff reached out to Mr. Slenski, "requesting to view all his grades, examinations, lab practicals, retakes and remediation examinations pursuant to and in accordance with the CMED policy-'Review of Academic Records.'"  (PageID#54, ¶198).  Plaintiff contends that pursuant to that policy, the Assistant Registrar maintains and stores "academic records" and that requests for access to academic records should be made in writing. (*Id*., ¶199).  A response to a request for access will be provided in 10 days and will explain the contents of the academic record.  (*Id*.)

The above allegations are the **only** ones directed at Mr. Slenski.  Notably, there is **no** allegation that Mr. Slenski failed to respond to Plaintiff's request for access to his academic record; nor is there any allegation that Mr. Slenski somehow violated the "Review of Academic Records" policy.  Indeed, Plaintiff provides absolutely no clue as to why the allegations regarding Mr. Slenski have been included in the Complaint or why Mr. Slenski has been made a Defendant in this matter.

In fact, any possible merit to a claim against Mr. Slenski is dispelled by the e-mail in which Plaintiff requested to review his academic record.  Documents attached to the pleadings, of course, become part of the pleadings and may be

11

considered by the Court in its review of a motion to dismiss.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335-36 (6th Cir. 2007) (relying on Fed. R. Civ. P. 10(c)).  Further, even when the document is not attached, the Court may **<u>still</u>** consider it without converting the motion into one for summary judgment, where the document is referenced in the complaint and integral to the plaintiff's claims.  *Id.*  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied."  *Weiner v. Klais & Co*., 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds by Swierkiwica v. Sorema, N.A*., 534 U.S. 506; 122 S.Ct 992 (2002).

In the case at bar, Plaintiff alleges in his Complaint that he "reached out" to Mr. Slenski, with a request to view all his grades, examinations, lab practicals, retakes and remediation examinations.  (PageID#54, ¶198).  A copy of that e-mail, along with Mr. Slenski's response, is attached hereto as **Exhibit B**, and may be considered by the Court in the context of this Motion to Dismiss.  *Commercial Money Ctr*., 508 F.3d at 335-36.  As Mr. Slenski's response makes clear, he offered to provide Plaintiff with a copy of his transcript.  Mr. Slenski also cogently explained that he did not have copies of Plaintiff's exam materials.  (**Exhibit B**).

Even if one guesses that Plaintiff was dissatisfied with the response that he received from Mr. Slenski for some unknown reason, the allegations in the Complaint still fall woefully short of asserting any type of cognizable cause of action

against Mr. Slenski.  As the allegations make clear, the "Review of Academic Records" policy directs the Assistant Registrar to maintain and store students' "academic records" and to appropriately respond to requests for access to those records.  (PageID#54, ¶199).  Yet, Plaintiff requested to view "examinations, lab practicals, retakes and remediation examinations."  (*Id*., ¶198).  There is no factual basis whatsoever for Plaintiff to contend that "academic records," as that term is used in CMU's policy, encompasses a student's individual examination materials and assignments, as opposed to merely the final course grades as reflected on a student's transcript.  Rather, as Mr. Slenski explained, he did not have access to the individual examination materials that Plaintiff had requested.  (**Exhibit B**).[7]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In light of the alleged facts, it is simply not plausible for Plaintiff to contend that Mr. Slenski, as the Assistant Registrar, maintained a copy of every exam and every assignment that every student at CMU, including Plaintiff, has completed for every single course, but that Mr. Slenski refused to share that information with Plaintiff.  Indeed, it is pure fantasy for Plaintiff to suggest that any

---

[7] The Court need not accept as true those allegations that are contradicted by the exhibits attached to the Complaint. *See HMS Prop Mgmt. Grp. Inc. v. Mille*, 69 F.3d 537 (Table) Nos. 94-3668, 94-3669. 1995 WL 641308, at *3 (6th Cir. Oct 31, 1995).

registrar at any university maintains such records.  A registrar's office maintains transcripts – that's it.

In short, the allegations in the Complaint that are directed at Mr. Slenski do not state a claim against him upon which relief can be grated.  Accordingly, the Court should grant the Motion to Dismiss in favor of Mr. Slenski pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss him as a party from this action, with prejudice.

## III.   GEORGE KIKANO SHOULD BE DISMISSED AS A PARTY.

Dr. George Kikano was, and remains, the Dean of the College of Medicine. (Doc. 1, PageID#5, ¶17 and PageID#34, ¶128).  According to the Complaint, on January 6, 2017, while Plaintiff's appeal with Dr. Perkowski was pending, but before Plaintiff appeared before the SPCC for the first time, Plaintiff "appealed" to Dean Kikano under the "Capricious Grading" policy.  (PageID#34, ¶128).  Plaintiff alleges that  Dean Kikano refused to meet with him "claiming that he does not handle any academic matters."  (*Id*.)  Plaintiff further alleges that Dean Kikano stated that he would meet with Plaintiff only if "a representative from the office of institutional equity" was present for their meeting; Plaintiff insists that the policy did not require such a condition in order to meet with Dean Kikano.  (PageID#34, ¶¶128, 129). There are **no** other allegations anywhere in the Complaint that mention or refer to Dean Kikano.

These allegations do not assert a cognizable claim against Dean Kikano.  In fact, Plaintiff's claims against Dean Kikano fail for all the same that Plaintiff's claim against Brian Slenski fail.  While the allegations asserted against Dean Kikano are slightly different than the allegations asserted against Brain Slenski, they are every bit as trivial.

Indeed, it is impossible to guess how Plaintiff would even try to articulate a claim for violations of due process or equal protection (or any other claim) against Dean Kikano based on the allegations in the Complaint.  Certainly, equal protection does not apply.  "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately' as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  Yet, there is no allegation that Dean Kikano agreed to meet some other student who was similarly situated to Plaintiff outside the presence of  "a representative from the office of institutional equity" but then refused to give Plaintiff such a meeting.

Further, there are no factual allegations to suggest that Plaintiff's due process rights were implicated in any way with regard to his request to meet with Dean Kikano.  In fact, as the allegations make clear, Dean Kikano actually agreed to meet with Plaintiff and "a representative from the office of institutional equity."

(PageID#34, ¶128).  Plaintiff makes no effort whatsoever to explain why he was unable to meet with Dean Kikano under those circumstances.  Therefore, the Court should grant the present motion pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss Dean Kikano as a party.

## IV.   THE REFERENCES IN THE COMPLAINT TO "DEFENDANTS" GENERALLY DO NOT ASSERT ANY CLAIM AGAINST THESE THREE INDIVIDUAL DEFENDANTS.

As noted above, the Complaint asserts fifteen (15) separate counts in three hundred forty-two (342) paragraphs against thirteen (13) Defendants (*i.e.*, CMU and twelve individual Defendants).  To make matters worse, the bulk of the allegations in the Complaint are asserted against the "Defendants" generally, without identifying which of the thirteen Defendants the allegation is actually referring to.  In fact, approximately **106** of the paragraphs in the Complaint refer to the Defendants generally without bothering to specify the Defendant against whom the allegation is directed.  (See PageID#9-95, ¶¶ 38, 76, 121, 122-125, 136, 141, 142-146, 148, 152-154, 161, 162, 167, 174, 181, 182, 186, 187, 190, 194-197, 200, 201, 207, 210-212, 215-218, 220-222, 225-228, 231, 232, 236, 238, 239-242, 249, 251, 254-258, 261-262, 264-267, 271-284, 293-295, 297, 301, 306, 308-311, 313, 326-329, 331-337, 339, 342).

These generalized allegations against the "Defendants" do not, and cannot, state a cause of action against Slenski, Howell or Kikano.  Plaintiff cannot abdicate

his obligation to state a claim against each Defendant by broadly claiming that all Defendants are somehow liable for a laundry list of claims.

As the Supreme Court has held, the pleading standard that Fed. R. Civ. P. 8 announces does not require "detailed factual allegations," but it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rule 8 simply does not allow a plaintiff "to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687. At the very least, the complaint must give each defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726-727 (6th Cir. 1996).

This conclusion is especially true given that Slenski, Howell or Kikano are entitled to qualified immunity with regard to the individual-capacity claims asserted against them under 42 U.S.C. §1983 (*i.e.*, Counts II and V). "[V]iolations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011) (original emphasis).

In short, Plaintiff's generalized allegations in the case at bar do not state a claim against Defendants Slenski, Howell or Kikano. This point is explained in greater detail with regard to Defendants Rossignol, Alan and Petersen in a separate

17

motion and brief to dismiss that those Defendants have contemporaneously filed. Defendants Slenski, Howell or Kikano incorporate those arguments herein by reference.

## CONCLUSION

For the foregoing reasons, Defendants Sandra Howell, Brian Slenski and George Kikano respectfully request that this Honorable Court GRANT their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and that the Court enter an Order that dismisses all three Defendants from this lawsuit with prejudice.

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: May 16, 2019       By: */s/ Michael E. Cavanaugh*
                          Michael E. Cavanaugh (P11744)
                          Ryan K. Kauffman (P65357)

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Cyril Hall served electronically.

*/s/ Michael E. Cavanaugh*
Michael E. Cavanaugh (P11744)

18