UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**VINCENT BERRY**,

    Plaintiff,

v

**CENTRAL MICHIGAN UNIVERSITY,
CENTRAL MICHIGAN UNIVERSITY
MEDICAL SCHOOL, MARK DESANTIS,
MARIE C. MATTE, BRIAN SLENSKI,
TINA THOMPSON, LINDA PERKOWSKI,
DANIEL GRIFFIN, MARC SPENCER, JAMIE
ALAN, ROBERT PETERSON, JULLIEN
ROSSIGNOL, SANDRA HOWELL,** and
**GEORGE KIKANO**,

    Defendants.

Case No. 2:19-cv-10306-TGB-SDD

Hon.   Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

---

| | |
|---|---|
| Cyril C. Hall (P29121) | Michael E. Cavanaugh (P11744) |
| Lamont D. Satchel (P52647) | Ryan K. Kauffman (P65357) |
| Hall Makled, P.C. | Fraser Trebilcock Davis & Dunlap, P.C. |
| At0torneys for Plaintiff | Attorneys for Defendants |
| 23756 Michigan Avenue | 124 W. Allegan, Suite 1000 |
| Suite 300 | Lansing, MI  48933 |
| Dearborn, MI 48124 | (517) 482-5800 |
| (313) 788-8888 | mcavanaugh@fraserlawfirm.com |
| Cyrilhalllaw@sbcglobal.net | rkauffman@fraserlawfirm.com |
| satchel@hallmakled.com | |

---

# DEFENDANTS ROSSIGNOL, ALAN, AND PETERSEN'S
# MOTION TO DISMISS

NOW COME Defendants Dr. Julien Rossignol, Dr. Jamie Alan and Dr. Robert Petersen, by and through their attorneys Fraser Trebilcock Davis & Dunlap, P.C., and for their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) state as follows:

1.    The Defendants in this matter have contemporaneously filed various motions to dismiss.   For a better understanding of these various motions, Drs. Rossignol, Alan, and Petersen respectfully suggest that the Court begin by reviewing the motion to dismiss that has been filed by Defendants Howell, Slenski and Kikano, and that the Court then review the present motion.

2.    Pursuant to Fed. R. Civ. P. 12(b)(6), a party may assert by motion the defense that the plaintiff has failed to state a claim upon which relief can be granted.

3.    For the reasons discussed in greater detail in the brief supporting this motion, which are incorporated herein by reference, Plaintiff Vincent Berry has failed to state a claim against Drs. Rossignol, Alan, and Petersen upon which relief can be granted.   Accordingly, these three Defendants should be dismissed as parties from this lawsuit with prejudice.

4.    Defendants, through their undersigned attorney, conferred, primarily through e-mail communication during the period of April 30, 2019 through May 15, 2019, with Plaintiff's attorney to seek concurrence from Plaintiff's attorney in this motion as required by E.D. Mich. L.R. 7.1(a). However, after Defendants' attorney explained the nature of this motion, its legal basis, and the equitable relief sought, concurrence was denied.

WHEREFORE, Defendants Dr. Julien Rossignol, Dr. Jamie Alan and Dr. Robert Petersen respectfully request that this Honorable Court GRANT their Motion

to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and enter an order that dismisses them with prejudice from this lawsuit.

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: May 16, 2019        By:*/s/ Michael E. Cavanaugh*
Michael E. Cavanaugh (P11744)
Ryan K. Kauffman (P65357)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Cyril Hall served electronically.

*/s/ Michael E. Cavanaugh*
Michael E. Cavanaugh (P11744)

STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VINCENT BERRY**,

     Plaintiff,

v

**CENTRAL MICHIGAN UNIVERSITY,
CENTRAL MICHIGAN UNIVERSITY
MEDICAL SCHOOL, MARK DESANTIS,
MARIE C. MATTE, BRIAN SLENSKI,
TINA THOMPSON, LINDA PERKOWSKI,
DANIEL GRIFFIN, MARC SPENCER, JAMIE
ALAN, ROBERT PETERSEN, JULIEN
ROSSIGNOL, SANDRA HOWELL,** and
**GEORGE KIKANO**,

     Defendants.

Case No. 2:19-cv-10306-TGB-SDD

Hon.   Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

| | |
|---|---|
| Cyril C. Hall (P29121) | Michael E. Cavanaugh (P11744) |
| Lamont D. Satchel (P52647) | Ryan K. Kauffman (P65357) |
| Hall Makled, P.C. | Fraser Trebilcock Davis & Dunlap, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 23756 Michigan Avenue | 124 W. Allegan, Suite 1000 |
| Suite 300 | Lansing, MI  48933 |
| Dearborn, MI 48124 | (517) 482-5800 |
| (313) 788-8888 | mcavanaugh@fraserlawfirm.com |
| Cyrilhalllaw@sbcglobal.net | rkauffman@fraserlawfirm.com |
| satchel@hallmakled.com | |

# DEFENDANTS ROSSIGNOL, ALAN, AND PETERSEN'S
# BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

LIST OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................1

STATEMENT OF FACTS .....................................................................2

STANDARD OF REVIEW ....................................................................5

LEGAL ARGUMENT ..........................................................................5

 I. DEFENDANTS ROSSIGNOL, ALAN AND PETERSEN SHOULD BE DISMISSED. ..............................................................5

  A. Plaintiff fails to state a claim against Drs. Rossignol, Alan and Petersen upon which relief can be granted because there are no factual allegations that their academic decisions deviated from accepted norms. ...................................7

  B. Plaintiff fails to state a claim against Drs. Rossignol, Alan and Petersen for a violation of procedural due process. .............8

 II. THE REFERENCES IN THE COMPLAINT TO "DEFENDANTS" GENERALLY DO NOT ASSERT ANY CLAIM AGAINST THESE THREE INDIVIDUAL DEFENDANTS ...............................................................................13

  A. The Federal Statutory Claims ....................................................14

  B. The §1983 Claims ......................................................................14

   1. The individual-capacity claims.......................................15

   2. The official-capacity claims ...........................................18

  C. The Claims for Negligence and Gross Negligence ..................19

  D. The Remaining Claims ...............................................................21

CONCLUSION ....................................................................................23

i

# LIST OF AUTHORITIES

**Cases**

*Al-Dabagh v. Case Western Reserve Univ.*, 777 F.3d 355 (6th Cir. 2015).........7, 18

*Ashcroft v. Iqbal*, 566 U.S. 662; 129 S. Ct. 1937; 173 L.Ed.2d 868 (2009) .......5, 16

*Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78; 98 S.Ct 948 (1978)................................................................................................ passim

*Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007).................................................................................5, 21

*Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003) ....................................8

*Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352 (6th Cir. 1996) .........................14

*Fuller v. Schoolcraft College*, 909 F.Supp.2d 862 (E.D. Mich. 2012)................9, 10

*Heverman v. Cnty of Calhoun*, 680 F.3d 642 (6th Cir. 2012) .................................16

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556 (6th Cir. 2011) ...................................................................................................................17

*Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999) ........................................................14

*HMS Prop Mgmt. Grp. Inc. v. Mille*, 69 F.3d 537 (Table) Nos. 94-3668, 94-3669. 1995 WL 641308, at *3 (6th Cir. Oct 31, 1995) .................................12

*Kentucky v. Graham*, 473 U.S. 159; 105 S.Ct. 3099 (1985) ......................15, 17, 18

*Mack v. City of Detroit*, 467 Mich. 186; 649 N.W.2d 47 (2002) ...........................21

*Mullenix v. Luna*, 136 S.Ct 305 (2015)...................................................................17

*Novak v. Nationwide Mut. Ins. Co*., 235 Mich App 675; 599 NW2d 546 (1999) ...................................................................................................................22

*Pearson v. Callahan*, 555 U.S. 223; 129 S.Ct. 808 (2009) ...................................17

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214; 106 S.Ct. 507 (1985)................................................................................................2, 7

*Roberts v. Auto-Owners*, 422 Mich. 594; 374 N.W.2d 905 (1985)........................21

*Rogers v. Tennessee Bd. of Regents*, 273 Fed. Appx. 458 (6th Cir. 2008).............10

*Saucier v. Katz*, 533 U.S. 194; 121 S.Ct. 2151 (2001) ............................................17

*Scrap Yard, LLC v. City of Cleveland*, 513 Fed. Appx. 500 (6th Cir. 2013) ..........16

*Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349 (6th Cir. 2015)..........7

*Swierkiwica v. Sorema, N.A.*, 534 U.S. 506; 122 S.Ct 992 (2002)..........................12

*U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99; 3113 NW2d 77 (1981) ...................................................................................................................................22

*Ward v. Michigan State University* (On Remand), 287 Mich. App. 76; 782 N.W.2d 514 (2010) .....................................................................................20

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997)...............................................12

*Will v. Michigan Dep't of State Police*, 491 U.S. 58; 109 S.Ct. 2304; 105 L.Ed.2d 45 (1989)..........................................................................................18

*Zebski v. Schmucker*, 972 F.Supp.2d 972 (E.D. Mich. 2013).................................16

**Statutes**

42 U.S.C. §1983........................................................................................ passim

42 U.S.C. §2000d.....................................................................................................14

M.C.L. §691.1407(2) ...............................................................................................19

M.C.L. §691.1407(2)(c)...........................................................................................20

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................2, 8, 23

Fraser Trebilcock

# **INTRODUCTION**

Defendants Julien Rossignol, Jamie Alan, and Robert Petersen bring this Motion to Dismiss because the Complaint lacks any factual allegation to suggest that the academic decisions that these three Defendants made with respect to Plaintiff violated Plaintiff's rights or that those decisions otherwise amounted to a violation of procedural due process.

At the outset, it should be noted how the present motion differs from the motion to dismiss that has been filed by Defendants Sandra Howell, Brian Slenski and George Kikano.  The motion filed by Howell, Slenski and Kikano is based on the observation that the Complaint fails to allege that those three Defendants took any action **whatsoever** against Plaintiff, or that any of them played any role in the academic decisions that eventually led Plaintiff to withdraw from CMU's medical school.

The present motion, on the other hand, is slightly different but no less compelling.  Defendants Rossignol, Alan, and Petersen recognize that the Complaint at least alleges that they participated in one or more of the academic decisions that impacted Plaintiff.  However, the Complaint fails to assert any facts to even remotely suggest that those academic decisions represented a substantial departure from accepted academic norms.  When a plaintiff asks a court to review the substance of a genuinely academic decision, as Plaintiff does in the case at bar, the court will not

override that decision where it represents the exercise of professional judgment. *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225; 106 S.Ct. 507 (1985).

In the case at bar, the allegations against Defendants Rossignol, Alan, and Petersen are merely that they made academic decisions that negatively impacted Plaintiff. As to these three Defendants, there are no factual allegations that their decisions were motivated by discriminatory animus or that their decisions otherwise constituted a substantial departure from accepted academic norms. As such, Plaintiff has failed to state a claim against these three Defendants, and they are entitled to be dismissed from this this lawsuit with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Defendants Rossignol, Alan, and Petersen incorporate by reference the Statement of Facts provided in the Brief in Support of Motion to Dismiss that has been contemporaneously filed by Defendants Slenski, Howell, and Kikano. Defendants Rossignol, Alan, and Petersen believe that review of that other motion and brief will provide background information that will be helpful to the Court in reviewing the present motion; accordingly, these Defendants respectfully request that the Court begin by reviewing the motion and brief submitted by Defendants Slenski, Howell, and Kikano before reviewing the present motion.

In addition, Defendants Rossignol, Alan, and Petersen wish to add some additional information regarding the allegations that have been asserted against them.  The Complaint alleges that at all relevant times, Dr. Julien Rossignol was a citizen of the State of Michigan and an employee of CMU.  (Doc. 1, PageID#5, ¶15).  The Complaint further alleges that when Plaintiff appeared before the Student Performance Conduct Committee ("SPCC") for the second time, which was after he failed the NBS and GI courses for a second time, Dr. Rossignol did not recuse himself from the committee.[1]  (PageID#49-50, ¶183).  These are the only allegations regarding Dr. Rossignol.

With regard to Dr. Jamie Alan, the Complaint alleges that he was the Chairperson for the SPCC during the second time that Plaintiff appeared before the committee.[2]  (PageID#4, ¶13).  Plaintiff also alleges that on or about October 24, 2017, after Plaintiff failed NBS for a second time, Dr. Alan directed him not to return to class.  (PageID#43, ¶160).  However, that decision was set aside, and Plaintiff was given the opportunity to continue with the semester and to retake the GI course (which Plaintiff later failed).  (PageID#50, ¶185).  Plaintiff further claims that after

---

[1] The Complaint erroneously alleges that Plaintiff appeared before the SPCC for a second time "on or about" January 22, 2018.  (PageID#49, ¶181).  In actuality, the hearing was on December 18, 2017.

[2] The Complaint alleges that Dr. Michael Conway, who has not been named as a Defendant, was the Chair of the SPCC the first time that Plaintiff appeared before the committee on January 23, 2017.  (PageID#35, ¶133).

3

his second appearance before the SPCC, Dr. Alan "requested and demanded that Plaintiff submit his withdrawal" from the medical school.  (PageID#54-55, ¶201). There are **no** other allegations regarding Dr. Alan.

The allegation against Dr. Robert Petersen are even more vague.   After identifying Dr. Petersen as "a citizen of the State of Michigan" and "an employee" of CMU (PageID#4-5, ¶14), the Complaint alleges that Dr. Petersen declined to give Plaintiff credit for an incorrect answer on one of Plaintiff's examinations. (PageID#45-47, ¶¶169-173).  In particular, the Complaint alleges that at some point during the fall of 2017, while Plaintiff was attempting to repeat the second year of the curriculum, he "met with several course directors regarding several [exam] questions, the answers to which impacted his grades . . . ."  (PageID#45-46, ¶169). Plaintiff contends that he challenged questions with Dr. Harold Belle, who wrote the exam question that Plaintiff had challenged and who allegedly agreed that Plaintiff's challenge was valid.[3]  (PageID#46, ¶170).  Plaintiff further contends that had he received credit for that challenged question, he would have passed the course, but that Dr. Petersen refused to throw out the question.  (PageID#46-47, ¶¶171-173). These are the only allegations that relate to Dr. Petersen.

---

[3] Plaintiff has not named Dr. Bell as a Defendant in this matter.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678; 129 S. Ct. 1937; 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 566 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id*. Where the well-pleaded facts do not permit the Court to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id*. at 679.

## LEGAL ARGUMENT

### I.   DEFENDANTS ROSSIGNOL, ALAN AND PETERSEN SHOULD BE DISMISSED.

In bringing this lawsuit, Plaintiff has tried his best to make the Complaint completely unmanageable. The Complaint asserts fifteen (15) separate counts against CMU and twelve individual Defendants, who are current and former

employees of CMU living in six different states (and one individual who resides in Canada).  To make matters worse, more than 100 paragraphs in the Complaint assert allegations against the "Defendants" generally, without identifying which of the thirteen Defendants the allegation is actually referring to.  (See PageID#9-95, ¶¶ 38, 76, 121, 122-125, 136, 141, 142-146, 148, 152-154, 161, 162, 167, 174, 181, 182, 186, 187, 190, 194-197, 200, 201, 207, 210-212, 215-218, 220-222, 225-228, 231, 232, 236, 238, 239-242, 249, 251, 254-258, 261-262, 264-267, 271-284, 293-295, 297, 301, 306, 308-311, 313, 326-329, 331-337, 339, 342).

Presumably, Plaintiff has pleaded his claims in such a convoluted way to try to mask the fact that this case represents nothing more than a disgruntled student complaining about his grades and lack of academic success.  However, a careful review of the Complaint reveals that Plaintiff has not stated a claim against Drs. Rossignol, Alan or Petersen because there are **no** factual allegations to show that their academic decisions substantially deviated from academic norms or that they otherwise violated Plaintiff's procedural due process rights.[4]

---

[4] By bringing this motion on the issues presented, the individual Defendants named herein do not waive, and expressly reserve, their right to assert other defenses and, if necessary, to make further arguments at a later time regarding those defenses, including but not limited to qualified immunity, governmental immunity, and sovereign immunity.

**A.    Plaintiff fails to state a claim against Drs. Rossignol, Alan and Petersen upon which relief can be granted because there are no factual allegations that their academic decisions deviated from accepted norms.**

As the Sixth Circuit has recognized, a court may "no more substitute [its] personal view" for a decision by a university's faculty "when it comes to an academic judgment" than the faculty "could substitute its views for [the court's] when it comes to a judicial decision." *Al-Dabagh v. Case Western Reserve Univ.*, 777 F.3d 355, 359 (6th Cir. 2015).  Quite simply, federal courts are ill-suited to evaluate "the multitude of academic decisions that are made daily by faculty members of public educational institutions—decisions that require 'an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decision-making.'"  *Ewing*, 474 U.S. at 226. (citing *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89; 98 S.Ct. 948 (1978)).  This reluctance to intervene in academic decisions is especially important with regard to degree requirements in the health care field where students will enter into "a profession whose practitioners are entrusted with life and death decisions." *Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 353 (6th Cir. 2015) (citations omitted).

Here, with regard to Drs. Rossignol, Alan and Petersen, Plaintiff complains of nothing more than purely academic decisions that the Court is unable to set aside. Plaintiff complains that Drs. Rossignol and Alan participated in the SPCC, which

decided that Plaintiff should be academically dismissed from CMU's medical school after Plaintiff failed both the NBS and GI courses for a second time.  (PageID#49-50, ¶183 and PageID#54-55, ¶201).  As to Dr. Petersen, Plaintiff merely alleges that he did not agree that Plaintiff was entitled to credit for one exam question that Dr. Petersen had deemed to be incorrect.  (PageID#46-47, ¶¶171-173).

These decisions undeniably represent the exercise of professional judgment. Indeed, there is no factual allegation anywhere in the Complaint that would allow one to reasonably conclude that the academic decisions made by Drs. Rossignol, Alan or Petersen were motivated by discriminatory animus or that the decisions otherwise substantially departed from academic norms.  As such, those decisions cannot be set aside and these Defendants are entitled to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B.   Plaintiff fails to state a claim against Drs. Rossignol, Alan and Petersen for a violation of procedural due process.

Furthermore, Plaintiff's allegations against Drs. Rossignol, Alan and Petersen fail to state a claim against them for a violation of due process.  Because property interests are "creatures of state law," Plaintiff is required to first show that his continued enrollment in CMUs' College of Medicine was a property interest recognized by state law in order to assert a cognizable claim for procedural due process. *See Bell v. Ohio State University*, 351 F.3d 240, 248-49 (6th Cir. 2003). Yet, Plaintiff fails point to any document that supposedly gave him a contractual

8

right (*i.e.*, a property interest recognized by state law) to continued enrollment at CMU.  For this reason alone, Plaintiff's procedural due process claim fails.[5]

However, even assuming purely for the sake of argument that Plaintiff's continued enrollment in medical school was a protected property interest, there is no allegation that Drs. Rossignol, Alan, or Petersen denied Plaintiff the process that was due.  To the extent Plaintiff's decision to withdraw from the College of Medicine is characterized as a "dismissal," it was plainly an academic dismissal, as opposed to a disciplinary dismissal.  This point is critical because **<u>no</u>** hearing is even required for non-disciplinary dismissals.  *Fuller v. Schoolcraft College*, 909 F.Supp.2d 862, 874 (E.D. Mich. 2012) (relying on *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 87; 98 S.Ct 948 (1978)).

In *Horowitz*, the Supreme Court clarified the need for flexibility in the application of procedural due process where a student's dismissal is academic and not disciplinary.  Because "[a]cademic evaluations of a student, in contrast to disciplinary evaluations, bear little resemblance to the judicial and administrative factfinding proceedings," no hearing is required for non-disciplinary dismissals. *Horowitz*, 435 U.S. at 90.  Rather, procedural due process is satisfied "where the

---

[5] In Paragraph 325 of the Complaint (PageID#90), Plaintiff states that as "a condition of his enrollment" into CMU's College of Medicine, he "execute[d] a contract" with CMU.  The paragraph suggests that the executed contract is attached to the Complaint as Exhibit A.  *Id*.  However, no exhibits are attached to the Complaint.

student is informed of the nature of the dissatisfaction and the final decision is 'careful and deliberate.'" *Fuller,* 909 F Supp.2d at 876; *see also Rogers v. Tennessee Bd. of Regents*, 273 Fed. Appx. 458, 462 (6th Cir. 2008).

In the case at bar, Plaintiff contends that after he failed NBS for a second time in October, 2017, Dr. Alan directed him to not return to class.  (PageID#43, ¶160). At that point, Plaintiff had already failed the NBS course twice and the GI course once.  (PageID#21-23, 28, 32-33, 35-36, 42, ¶¶79, 84-85, 104, 120, 124, 132-133, 158-159).  By then, Plaintiff had been fully informed of the faculty's dissatisfaction with his academic performance, so he was not entitled to go any farther in his education.  See *Fuller,* 909 F Supp.2d at 876.

Moreover, nothing in the Complaint suggests that the initial decision to not allow Plaintiff to continue in the program after he failed NBS for a second time was anything but "careful and deliberate."  *See Id*.  Further, while Dr. Alan allegedly "directed" Plaintiff to not return to class, that was **not** the final word on the matter. Rather, the decision was set aside and Plaintiff was allowed to continue with the semester.  As such, Plaintiff attempted to retake the GI course, and he failed that course too.  (PageID#50, ¶185).  Accordingly, the allegation that Dr. Alan told Plaintiff not to return to class is completely immaterial to Plaintiff's "academic dismissal" – *i.e*., his decision to later withdraw from medical school in March, 2018.

10

Similarly, although Dr. Alan, and allegedly Dr. Rossignol, participated on the SPCC the second time that Plaintiff appeared before the committee, neither one denied Plaintiff his procedural due process rights.  Certainly, there are no facts alleged to suggest that Drs. Alan and Rossignol were somehow not impartial decision-makers, or that either one was biased against Plaintiff.  In fact, the SPCC hearing was not even required in the first place to satisfy procedural due process. *Horowitz*, 435 U.S. at 90.   Plaintiff would have been afforded adequate due process even if he had been academically dismissed immediately upon failing the NBS course for the second time.  *Id*.   The SPCC hearing was merely an example of additional due process that Plaintiff was given that went above and beyond the demands of the Constitution.  Consequently, whether or not Drs. Alan and Rossignol participated in that process (and whether or not Plaintiff was satisfied with the outcome of the process) is entirely irrelevant.[6]

It is also entirely irrelevant that Plaintiff alleges that Dr. Alan "requested and demanded that Plaintiff submit his withdrawal" from the medical school *after*

---

[6] Plaintiff alleges that Dr. Rossignol did not "recuse" himself from the SPCC hearing even though Dr. Rossignol was one of the course directors the second time that Plaintiff took NBS.  (PageID#49-50, ¶183).  Defendants recognize that the Court will accept the allegation as true.  However, the allegation is deeply misleading. Importantly, the allegation does **not** allege that Dr. Rossignol voted with regard to the SPCC's decision to academically dismiss Plaintiff.  As Plaintiff is well aware, Dr. Rossignol merely attended the SPCC to answer any questions that the committee might have had regarding Plaintiff's failure to pass the NBS course.  Dr. Rossignol was **not** a voting member on the SPCC.

Plaintiff's second appearance before the SPCC.  (PageID#54-55, ¶201).  Dr. Alan was the Chair of the SPCC.  (PageID#4 and 35, ¶¶13 and 133).  Obviously, he had an obligation to inform Plaintiff of the SPCC's decision.  A copy of the notice that Dr. Alan provided to Plaintiff informing Plaintiff of the SPCC's decision is attached hereto as **Exhibit A**.[7]  There is absolutely nothing about the communication that could possibly form the basis of any type of cause of action against Dr. Alan.[8]

In fact, as Dr. Alan's communication conveys, Plaintiff was afforded the further opportunity to appeal the SPCC's decision.  (**Exhibit A**).  This is one more example of Plaintiff receiving far more due process than is required by the Constitution.  Indeed, in the Complaint, Plaintiff candidly acknowledges that he appealed the SPCC's decision, and that an *ad hoc* committee reviewed and overturned that decision.  (PageID#50, ¶185).  Given this admission, it is impossible to image why Plaintiff is even grousing about the SPCC's decision.

---

[7] Plaintiff does not attach a copy of Dr. Alan's correspondence to the Complaint.  However, even when the document is not attached to the pleadings, the Court may still consider it without converting the motion into one for summary judgment, where the document is referenced in the Complaint and integral to the plaintiff's claims.  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds by Swierkiwica v. Sorema, N.A.*, 534 U.S. 506; 122 S.Ct 992 (2002).

[8] The Court need not accept as true those allegations that are contradicted by the exhibits attached to the Complaint.  *See HMS Prop Mgmt. Grp. Inc. v. Mille*, 69 F.3d 537 (Table) Nos. 94-3668, 94-3669. 1995 WL 641308, at *3 (6th Cir. Oct 31, 1995).

Even more mysterious is why Plaintiff chose to make Dr. Petersen a Defendant.   According to the Complaint, Dr. Petersen determined that one of Plaintiff's exam answers was incorrect, and as result of missing that question, Plaintiff failed one of his courses.   (PageID#45-47, ¶¶169-173).   It is not clear whether these allegations are referring to Plaintiff failing the NBS course for a second time or whether the allegations are referring to Plaintiff failing the GI course for the second time.   However, there was no due process violation merely because Plaintiff did not like his grade.   "[T]he decision of an individual professor as to the proper grade for a student in his course . . . requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." See *Horowitz*, 435 U.S. at 90.

In any event, Plaintiff was given the opportunity to appeal Dr. Petersen's determination that Plaintiff had failed the courses to both the SPCC and to the *ad hoc* committee – even though the Constitution did not require that he receive those appeals. *Id*.   Under these circumstances, Plaintiff has failed to plead a claim against these three Defendants upon which relief can be granted.

## II.   THE REFERENCES IN THE COMPLAINT TO "DEFENDANTS" GENERALLY DO NOT ASSERT ANY CLAIM AGAINST THESE THREE INDIVIDUAL DEFENDANTS

Because the Complaint includes so many allegations against "Defendants" generally, without identifying which of the thirteen Defendants the allegation is

actually referring to, it is necessary to at least briefly discuss why none of these general allegations state a claim against Drs. Rossignol, Alan or Petersen.

## A.    The Federal Statutory Claims

In Count I of the Complaint, Plaintiff asserts a claim for alleged violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, and in Count VI, Plaintiff asserts a claim for alleged violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a).  (PageID## 56-58 and 68-70).  Claims under Title VI and §504 are asserted against the entity that receives federal funds.  *Buchanan v. City of Bolivar, Tenn*., 99 F.3d 1352, 1356 (6th Cir. 1996) and *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999).  There is no individual liability under either statute.  *Id*.  Consequently, Counts I and VI are asserted against CMU only, and do not state a claim against any of the individual Defendants.[9]

## B.    The §1983 Claims

Plaintiff asserts four counts under 42 U.S.C. §1983: Count II (Substantive Due Process); Count III (Equal Protection); Count IV (Conduct that Shocks the Conscience); and Count V (Procedural Due Process).  (Doc. 1, PageID#58-68).  The Substantive Due Process and Procedural Due Process claims are individual-capacity

---

[9] Although Plaintiff has also listed "CMED" as a Defendant, the College of Medicine is not a separate legal entity that is capable of being sued.  This point is explained in greater detail in CMU's Motion to Dismiss.

14

claims and asserted against all Defendants.[10] (PageID#58). Consequently, with these two claims, Plaintiff seeks to impose personal liability on the individual Defendants. On the other hand, Count III (Equal Protection) and Count IV (Conduct that Shocks the Conscience) are asserted against the Defendants in their "Official Capacit[ies]" only. (PageID#61 and 63).

### 1. The individual-capacity claims

For all the reasons explained above, Plaintiff does not assert any claim at all against Drs. Rossignol, Alan, and Petersen, much less an individual-capacity claim under 42 U.S.C §1983. Consequently, no further analysis is necessary to dismiss Counts II and V to the extent those Counts are asserted against Drs. Rossignol, Alan, and Petersen. However, for the sake of completeness, the Court should recognize that Plaintiff has not cured the deficiencies of his pleading merely by trying to assert his individual-capacity claims against all Defendants generally.

In order to hold a defendant liable in his or her individual capacity under §1983, the plaintiff must show that the defendant was **personally** involved in the alleged constitutional deprivations. *Kentucky v. Graham*, 473 U.S. 159, 166; 105 S.Ct. 3099 (1985). To do so, the plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws

---

[10] The Procedural Due Process claim (Count V) is actually silent regarding the Defendants against whom it is asserted. However, throughout the Count, Plaintiff refers to "Defendants" (plural). (Doc. 1, PageID#66-67).

of the United States (2) caused by a person acting under color of state law. *Heverman v. Cnty of Calhoun*, 680 F.3d 642 (6th Cir. 2012). "Persons sued in their individual capacities under §1983 can be held liable only on their own unconstitutional behavior." *Id.*; see also *Iqbal*, 556 U.S. at 676 (because vicarious liability is inapplicable to §1983 suits, "a plaintiff must plead that **each** Government-official defendant, **through the official's own individual actions**, has violated the Constitution.") (emphasis added).

In the case at bar, Plaintiff has failed to set forth facts to establish that Drs. Rossignol, Alan and/or Petersen, through his own conduct, deprived Plaintiff of any constitutional right. As previously explained, there are certainly no facts alleged to establish that these three Defendants violated Plaintiff's procedural due process rights. Likewise, there are no factual allegations in the Complaint to suggest that these Defendants violated Plaintiff's substantive due process rights. See *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-250 (6th 2003) (holding that substantive due process protects a narrow class of interests so rooted in the traditions of the people as to be ranked fundamental). Simply put, because Plaintiff has failed to allege that any one of these three Defendants was personally involved in an alleged constitutional deprivation, the Court should dismiss the §1983 claims that have been asserted against them. *See Scrap Yard, LLC v. City of Cleveland*, 513 Fed. Appx. 500, 504 (6th Cir. 2013); *Zebski v. Schmucker*, 972 F.Supp.2d 972 (E.D. Mich. 2013).

Furthermore, Drs. Rossingol, Alan and Petersen are entitled to qualified immunity, at least with regard to the two §1983 claims that Plaintiff has pleaded against them in their individual capacities (*i.e.*, Count II and Count V).[11]   The Sixth Circuit has consistently held that "violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."  *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011) (original emphasis).   As such, courts analyze separately whether the plaintiff has stated a plausible constitutional violation by each individual defendant, and will not ascribe the acts of all individual defendants to each individual defendant.  *Id*.

In the case at bar, the allegations do not even try to show that the right at issue that was supposedly violated was "clearly established."  See *Saucier v. Katz*, 533 U.S. 194, 201; 121 S.Ct. 2151 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223; 129 S.Ct. 808 (2009)).  Such an inquiry is undertaken "in light of the specific context of the case [and] not as a broad general proposition." *Mullenix v. Luna*, 136 S.Ct 305, 308 (2015).  In this way, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Id*.  Simply

---

[11] Qualified immunity, of course, does not apply to the official-capacity claims, so the defense is not available with regard to Count III (Equal Protection) and Count IV (Conduct that Shocks the Conscience).  See *Kentucky v. Graham*, 473 U.S. 159, 166-67; 105 S.Ct. 3099 (1985).

put, because the Complaint fails to plead any facts to suggest that Drs. Rossignol, Alan or Petersen did anything wrong, the Complaint fails to allege that they somehow violated Plaintiff's "clearly established rights."[12]

### 2. *The official-capacity claims*

Plaintiff's official-capacity §1983 claims are asserted against CMU. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71; 109 S.Ct. 2304; 105 L.Ed.2d 45 (1989) (holding that a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office); see also *Kentucky v. Graham,* 473 U.S. 159, 165-166; 105 S.Ct. 3099, 3104-3105; 87 L.Ed.2d 114 (1985)).  Official-capacity claims are, of course, limited to seeking prospective relief. *Will*, 491 U.S. at 71, n. 10.

Nevertheless, the official-capacity claims should still be dismissed to the extent that they are asserted against Drs. Rossignol, Alan and Petersen (as opposed to some other official).  There is no allegation anywhere in the Complaint that these

---

[12] Certainly, Plaintiff does not, and cannot, allege that he had a "clearly established right" in passing any course, or in receiving any particular grade, given that both the United States Supreme Court and the Sixth Circuit have held that academic decisions are not reviewable by the courts. *Ewing*, 474 U.S. at 225-26; *Al-Dabagh*, 777 F.3d at 359.  Plaintiff also does not have a "clearly established right" under the Due Process Clause.  Both the Supreme Court and the Sixth Circuit have merely assumed, but have never decided, that a student is entitled to due process with regard to an academic dismissal. *Horowitz*, 435 U.S. at 87-90; *Bell*, 351 F.3d at 249.  Even then, due process is satisfied when, as here, the faculty's decision is "careful and deliberate" and the student is informed of the decision. *Horowitz*, 435 U.S. at 85.

officials have the authority to provide Plaintiff with the **only** equitable relief that he seeks – reinstatement into CMU's medical school.

While it is nearly impossible to imagine that Plaintiff could ever convince the Court to order CMU to reinstate him into its medical school (given Plaintiff's abysmal academic record), it should be noted for purposes of the present motion that these Defendants could not carry out such an order anyway.  Drs. Rossignol and Petersen are course directors.  They do not have the authority to reinstate Plaintiff into the medical school (at least there are no allegations to suggest otherwise).  Even Dr. Alan, as the Chair of the SPCC, lacks the authority to arrange for Plaintiff's reinstatement at this point given that no appeal is pending with the SPCC.  There is simply no point to Plaintiff proceeding with his official-capacity claims against these particular Defendants.  Indeed, Counts III and IV should be dismissed against every official who cannot provide Plaintiff with the prospective relief that he seeks.

### C.    The Claims for Negligence and Gross Negligence

Plaintiff also fails to assert a cognizable claim against Drs. Rossignol, Alan or Petersen for negligence (Count VIII) or gross negligence (Count IX).  These claims are asserted against "All Defendants," and Drs. Rossignol, Alan and Petersen are entitled to governmental immunity under M.C.L. §691.1407(2).

In relevant part, M.C.L. §691.1407(2), provides that each employee of a governmental agency is immune from tort liability for any injury or property damage

19

caused by the employee while in the course of his employment if the following conditions are met:

>   (a)   The employee is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
>   (b)   The governmental agency is engaged in the exercise or discharge of a governmental function.
>
>   (c)   The employee's conduct does not amount to gross negligence that is the proximate cause of the plaintiff's injury or damage.   *Id.*

In the case at bar, all three conditions have been met, so Drs. Rossignol, Alan, and Petersen are entitled to governmental immunity.  The Complaint alleges that each Defendant made some academic decision while employed by CMU. Consequently, there is no dispute that each one was acting within the scope of his authority and that he was engaged in the exercise or discharge of a governmental function.[13]

There is also no allegation that the conduct of any of the Defendants amounted to gross negligence that was the proximate cause of Plaintiff's injury.  With regard to Count X, Plaintiff alleges that the "Defendants" were merely "negligent." (PageID#74, ¶266).   That allegation is obviously insufficient to overcome governmental immunity.  *See* M.C.L. §691.1407(2)(c).  Even with regard to Count

---

[13] University operations constitute a governmental function. *Ward v. Michigan State University* (On Remand), 287 Mich. App. 76, 84-85; 782 N.W.2d 514 (2010).

XI, Plaintiff alleges only that some other unidentified "Defendants" (plural) were "grossly negligent" without providing any facts to suggest Drs. Rossignol, Alan and Petersen were grossly negligent.  "Threadbare recitals of the elements of a cause of action," supported by only conclusory statements, do not state a claim upon which relief can be granted.  *Twombly*, 550 U.S. at 570.

Simply put, a plaintiff has an obligation to plead an avoidance of governmental immunity.  *Mack v. City of Detroit*, 467 Mich. 186, 193; 649 N.W.2d 47 (2002).  Here, Plaintiff has not done so.  In fact, if anything, the allegations in the Complaint affirmatively establish that these Defendants are entitled to governmental immunity.

### D.    The Remaining Claims

Finally, none of the remaining counts in the Complaint state a claim against Drs. Rossignol, Alan, or Petersen for the following reasons:

- Count VII (Intentional Infliction of Emotional Distress) fails.  There is no factual allegation that Drs. Rossignol, Alan or Petersen engaged in any wrongful or tortious act, much less than the "extreme and outrageous conduct" that went "beyond all possible bounds of decency" and that could be regarded as "atrocious, and utterly intolerable in a civilized community."  *See Roberts v. Auto-Owners*, 422 Mich. 594, 602-603; 374 N.W.2d 905 (1985).

- Counts X (Michigan's Persons with Disabilities Civil Rights Act) and Count XI (Michigan's Elliot Larsen Civil Rights Act) fail.  These claims are asserted against CMU only.  This point is explained in more detail in the Brief in Support of the Motion to Dismiss that CMU has filed on its own behalf.  In any event, there is no factual allegation that could possibly make either count viable against Drs. Rossignol, Alan or Petersen.

- Count XII (Defamation) is pleaded against Defendant Tina Thompson only. (PageID#87) and Count XIII (Breach of Contract) is pleaded against CMU only (PageID#90).  These claims are not asserted against these Defendants.

- Counts XIV (Fraudulent Misrepresentation) fails.  The elements for a claim of fraudulent misrepresentation are as follows:  (1) the defendant made a material representation, (2) the representation was false, (3) when making the representation, the defendant knew or should have known it was false, (4) the defendant made the representation with the intention that the plaintiff would act upon it, and (5) the plaintiff acted upon it and suffered damages as a result.  *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich App 675, 688; 599 NW2d 546 (1999).  The allegations in the Complaint do not state these elements against **any** individual Defendant.  This point is explained in more detail in the Brief in Support of Motion to Dismiss that has been filed by Defendants DeSantis, Griffin, Perkowski and Spencer.

- Count XV ("Innocent Misrepresentation") is asserted against CMU.  To establish a claim for innocent misrepresentation, the plaintiff must show, among other things, that the injury suffered by him inured to the benefit of the misrepresenter.  *U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 118-19; 3113 NW2d 77 (1981).  As such, "it is necessary to show that not only does the victim suffer injury, but also the injury must inure to the misrepresenter's benefit."  *Id*. at 118.   In this case, there is no allegation that the benefit from Plaintiff's "contract" – *i.e.*, his enrollment in medical school – inured to any of the individual Defendants.  Obviously, none of the individual Defendants received any portion of Plaintiff's tuition payments; nor, were the individual Defendants paid any type of commission for securing Plaintiff's enrollment in Central Michigan University's medical school.[14]  Therefore, Plaintiff's innocent representation claim fails against all individual Defendants.  See *U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 118; 3113 NW2d 77 (1981) .  This point is explained in more detail in Brief in Support of the Motion to Dismiss that CMU has filed.

---

[14]   Plaintiff also fails to allege that any of the individual Defendant made a representation that was false and that actually deceived Plaintiff, which are further elements for a viable claim for innocent misrepresentation.  *Black*, 412 Mich at 114.

## CONCLUSION

For the foregoing reasons, Defendants Rossignol, Alan and Petersen respectfully request that this Honorable Court GRANT their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and that the Court enter an Order that dismisses all three Defendants from this lawsuit with prejudice.

*Respectfully submitted,*

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: May 16, 2019          By:*/s/ Michael E. Cavanaugh*
                                   Michael E. Cavanaugh (P11744)
                                   Ryan K. Kauffman (P65357)

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Cyril Hall served electronically.

*/s/ Michael E. Cavanaugh*
Michael E. Cavanaugh (P11744)