UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**VINCENT BERRY**,

     Plaintiff,

                              Case No. 2:19-cv-10306-TGB-SDD

v

                              Hon.  Terrence G. Berg
                              Magistrate Judge Stephanie Dawkins Davis

**CENTRAL MICHIGAN UNIVERSITY,**
**CENTRAL MICHIGAN UNIVERSITY**
**MEDICAL SCHOOL, MARK DESANTIS,**
**MARIE C. MATTE, BRIAN SLENSKI,**
**TINA THOMPSON, LINDA PERKOWSKI,**
**DANIEL GRIFFIN, MARC SPENCER, JAMIE**
**ALAN, ROBERT PETERSON, JULLIEN**
**ROSSIGNOL, SANDRA HOWELL,** and
**GEORGE KIKANO,**

     Defendants.

_____

Cyril C. Hall (P29121)          Michael E. Cavanaugh (P11744)
Lamont D. Satchel (P52647)     Ryan K. Kauffman (P65357)
Hall Makled, P.C.             Fraser Trebilcock Davis & Dunlap, P.C.
At0torneys for Plaintiff        Attorneys for Defendants
23756 Michigan Avenue       124 W. Allegan, Suite 1000
Suite 300                  Lansing, MI  48933
Dearborn, MI 48124         (517) 482-5800
(313) 788-8888             mcavanaugh@fraserlawfirm.com
Cyrilhalllaw@sbcglobal.net    rkauffman@fraserlawfirm.com
satchel@hallmakled.com

_____

### DEFENDANTS CMU, DESANTIS, GRIFFIN, PERKOWSKI, AND SPENCER'S MOTION FOR MORE DEFINITE STATEMENT

    NOW COME Defendants Central Michigan University Board of Trustees, Dr.

Mark DeSantis, Dr. Daniel Griffin, Dr. Linda Perkowski and Dr. Marc Spencer, by

and through their attorneys Fraser Trebilcock Davis & Dunlap, P.C., and for their Motion for More Definite Statement pursuant to Fed. R. Civ. P. 12(e) state as follows:

1.     Plaintiff Vincent Berry was formerly enrolled in the Central Michigan University ("CMU") College of Medicine.  Plaintiff withdrew from the college in March, 2018, in lieu of accepting an academic dismissal, after he failed **five** different courses in a little more than one year.  Plaintiff was given numerous opportunities to remedy his failing grades through various remediation efforts and appeals. However, after an extensive due process and careful deliberation, it was ultimately determined that Plaintiff had failed to satisfy the academic requirements of CMU's medical school program.

2.     Nevertheless, Plaintiff has brought this lawsuit to challenge nearly every single academic decisions that occurred throughout the two and one-half years that he was enrolled in CMU's College of Medicine.  In doing so, Plaintiff attempts to couch normal academic decisions as intentional acts of discrimination motivated by animus against those of Middle-Eastern descent.

3.     Notably, however, Plaintiff does **not** contend that all of the individual Defendants participated in each one of the academic decisions that impacted him. Rather, different Defendants (and different combinations of Defendants) allegedly played different roles at different times with regard to each one of the challenged

academic decisions. In addition, the context in which each academic decision was made varied significantly. Accordingly, Plaintiff's claims against each Defendant are markedly different.

3.    However, despite this fact, Plaintiff's Complaint repeatedly alleges that in making academic decisions, the Defendants (acting either together or individually) violated some unidentified policy – without stating which policy was allegedly violated, and often times without even indicating the Defendant who was supposedly responsible for the violation. (*See e.g.*, Complaint, Doc. 1, PageID#15-50, ¶¶ 62, 87, 89, 114, 120, 122, 123, 124, 127, 132, 133, 141, 151, 163, 169, 174, 175, 176, 177, 182, 184, 185).

4.    Simply put, to the extent that Plaintiff alleges that any academic decision somehow violated CMU's policies, which Plaintiff claims are acts of intentional discrimination, Plaintiff should be required to identify the specific policy that was allegedly violated and to further identify the particular Defendant allegedly responsible for the violation. Without such allegations, Defendants cannot reasonably prepare a response because none of them have any indication regarding which policy he or she is alleged to have violated.

5.    Notably, all Defendants who have been served in this matter have now filed motions to dismiss. In three separate motions, seven individual Defendants, Sandra Howell, Brian Slenski, George Kikano, Julien Rossignol, Jaime Alan, Robert

Petersen and Tina Thompson have sought to be dismissed as parties.   (Doc. 3, PageID#127-160; Doc. 4, PageID#161-193; and Doc 5, PageID#194-217).

6.     Defendant Central Michigan University Board of Trustees ("CMU") has also sought to have a number of claims dismissed (Doc. 6, PageID#218-244).  In addition, Defendants DeSantis, Griffin, Perkowski and Spencer have moved to dismiss various claims from Plaintiff's Complaint.   (Doc. 7, PageID#245-263). When these motions are considered in light of the other motions to dismiss that have been filed in this matter, it becomes clear that Plaintiff has actually only pleaded two claims against Drs. DeSantis, Griffin, Perkowski and Spencer that might survive – *i.e.*, the two individual-capacity claims that have brought under 42 U.S.C. §1983: Count II (Substantive Due Process) and Count V (Procedural Due Process).

7.     However, the two §1983 claims that have been asserted against Drs. DeSantis, Griffin, Perkowski and Spencer are so vague and ambiguous that they cannot reasonably prepare a response.  The vague allegations also prevent CMU from responding to the official-capacity claims (Counts III and IV) or the federal statutory claims (Counts I and VI).  The allegations related to these claims simply do not inform the Defendants regarding which polices they supposedly violated. Therefore, Defendants bring this Motion for More Definite Statement pursuant to Fed. R. Civ. P. 12(e).

8.     Defendants, through their undersigned attorney, conferred, primarily through e-mail communication during the period of April 30, 2019 through May 15, 2019, with Plaintiff's attorney to seek concurrence from Plaintiff's attorney in this motion as required by E.D. Mich. L.R. 7.1(a). However, after Defendants' attorney explained the nature of this motion, its legal basis, and the equitable relief sought, concurrence was denied.

WHEREFORE,  Defendants Central Michigan University Board of Trustees, Dr. Mark DeSantis, Dr. Daniel Griffin, Dr. Linda Perkowski, and Dr. Marc Spencer respectfully request that this Honorable Court GRANT their Motion for More Definite Statement and enter an order that requires Plaintiff to file an amended complaint that provides a more definite statement by: (1) specifically identifying the policy, procedure, rule, guideline, practice, protocol, regulation, syllabus, manual, and/or code that was allegedly violated in each of the following paragraphs: (¶¶ 62, 87, 89, 100, 114, 120, 122, 123, 124, 127, 132, 133, 141, 151, 163, 169, 174, 175, 176, 177, 182, 184, 185), and (2) specifically identifying which Defendant or Defendants is referred to in the following paragraphs: PageID#9-95, ¶¶ 38, 76, 121, 122-125, 136, 141, 142-146, 148, 152-154, 161, 162, 167, 174, 181, 182, 186, 187, 190, 194-197, 200, 201, 207, 210-212, 215-218, 220-222, 225-228, 231, 232, 236, 238, 239-242, 249, 251, 254-258, 261-262, 264-267, 271-284, 293-295, 297, 301, 306, 308-311, 313, 326-329, 331-337, 339, 342).

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: May 16, 2019          By:/s/ Michael E. Cavanaugh
                             Michael E. Cavanaugh (P11744)
                             Ryan K. Kauffman (P65357)

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Cyril Hall served electronically.

/s/ Michael E. Cavanaugh
Michael E. Cavanaugh (P11744)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**VINCENT BERRY**,

    Plaintiff,

v

**CENTRAL MICHIGAN UNIVERSITY,
CENTRAL MICHIGAN UNIVERSITY
MEDICAL SCHOOL, MARK DESANTIS,
MARIE C. MATTE, BRIAN SLENSKI,
TINA THOMPSON, LINDA PERKOWSKI,
DANIEL GRIFFIN, MARC SPENCER, JAMIE
ALAN, ROBERT PETERSON, JULLIEN
ROSSIGNOL, SANDRA HOWELL,** and
**GEORGE KIKANO**,

    Defendants.

Case No. 2:19-cv-10306-TGB-SDD

Hon.   Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

---

| | |
|---|---|
| Cyril C. Hall (P29121) | Michael E. Cavanaugh (P11744) |
| Lamont D. Satchel (P52647) | Ryan K. Kauffman (P65357) |
| Hall Makled, P.C. | Fraser Trebilcock Davis & Dunlap, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 23756 Michigan Avenue | 124 W. Allegan, Suite 1000 |
| Suite 300 | Lansing, MI  48933 |
| Dearborn, MI 48124 | (517) 482-5800 |
| (313) 788-8888 | mcavanaugh@fraserlawfirm.com |
| Cyrilhalllaw@sbcglobal.net | rkauffman@fraserlawfirm.com |
| satchel@hallmakled.com | |

---

# DEFENDANTS CMU, DESANTIS, GRIFFIN, PERKOWSKI, AND SPENCER'S BRIEF IN SUPPORT OF THEIR MOTION FOR MORE DEFINITE STATEMENT

## **TABLE OF CONTENTS**

LIST OF AUTHORITIES..........................................................................ii

STATEMENT OF FACTS ......................................................................1

    A.    Plaintiff's allegation that Dr. DeSantis did not allow Plaintiff to review his anatomy lab exam. ............................................................2

    B.    Plaintiff's allegations that Defendants violated unidentified policies with regard to the NBS retake examination. ........................3

    C.    Plaintiff's allegations that Defendants violated unidentified policies with regard to the NBS remediation examination. ...............5

    D.    Plaintiff's vague allegations regarding the other opportunities that he was given to remediate his failing grades. .............................6

LEGAL ARGUMENT ............................................................................8

CONCLUSION .....................................................................................11

# LIST OF AUTHORITIES

## Cases

*BAC Home Loans Servicing L.P. v. Fall Oaks Farm, LLC*, Case No. 11-cv-274, 2011 WL 6749066 (S.D. Ohio, Dec. 22, 2011) .....................................8

*Crawford-El v. Britton*, 523 U.S. 574; 118 S.Ct. 1584 (1998).......................8, 9, 11

*Federal Ins. Co. v. Webne*, 513 F.Supp.2d 921 (N.D. Ohio, 2007) .........................8

*Harlow v. Fitzgerald*, 457 U.S. 800; 102 S.Ct. 2727 (1982)....................................9

## Statutes

42 U.S.C. §1983.........................................................................................................9

## Rules

Fed. R. Civ. P. 12(e) .......................................................................................8, 9, 11

Fed. R. Civ. P. 33 ...................................................................................................11

## STATEMENT OF FACTS

For the convenience of the Court and to avoid unnecessary repetition, Defendants CMU, DeSantis, Griffin, Perkowski and Spencer incorporate by reference the Statement of Facts provided in the Brief in Support of Motion to Dismiss that has been filed by Defendants Slenski, Howell, and Kikano.  (Doc. 3, PageID#127-160).

As the Complaint reveals, Plaintiff was given numerous opportunities during the time that he was enrolled in CMU's medical school program to remedy his failing grades through various remediation efforts and appeals.  However, after extensive due process and careful deliberation, it was ultimately determined that Plaintiff had failed to satisfy the program's academic requirements. Consequently, Plaintiff voluntarily withdrew from the College of Medicine in March, 2018.

Rather than accepting responsibility for his own academic shortcomings, however, Plaintiff instead claims that the entire process surrounding the remediation procedures and appeals that he was given violated some unidentified and vaguely-described policies, procedures, guidelines and/or rules.  (*See e.g.*, PageID#15-50, ¶¶ 62, 87, 89, 114, 120, 122, 123, 124, 127, 132, 133, 141, 151, 163, 169, 174, 175, 176, 177, 182, 184, 185).  The allegations are so vague and ambiguous that the Defendants are unable to reasonably prepare a response.  The context in which these vague allegations appear is explained in more detail below.

1

### A.  Plaintiff's allegation that Dr. DeSantis did not allow Plaintiff to review his anatomy lab exam.

According to the allegations in the Complaint, Plaintiff's academic difficulties began during the 2016 Fall Semester (at the beginning of Plaintiff's second year in the medical school program).  Plaintiff alleges that during that semester, he realized that he was doing poorly in the anatomy lab portion of his NBS course, so he asked Dr. Mark DeSantis, one of the anatomy lab instructors, to review his anatomy lab exam.  (PageID#15, ¶60).  Plaintiff alleges that Dr. DeSantis "refused to share Plaintiff's [exam] answers with him," and that the refusal was a "violation of Plaintiff's right to view his grades as secured by CMU and CMED policy, practice and protocol . . . ."  (PageID#15, ¶¶ 61, 62).  Plaintiff also contends that Dr. DeSantis engaged in conduct and treatment of Plaintiff that violated "promulgated university rules, regulations, code of conduct and other obligatory conditions of [Dr. DeSantis's] employment."  (PageID#15-16, ¶63).

Notably, the allegations do **<u>not</u>** identify or meaningfully describe the "policy, practice or protocol" or the "rules, regulations, [or] code of conduct" that Dr. DeSantis allegedly violated.  Further, Plaintiff's allegations intentionally create confusion because they allege that Dr. DeSantis refused to share Plaintiff's exam "answers," but then claim that Plaintiff had the right to view his "grades" as secured by CMU and CMED policy.  (PageID#15, ¶¶60-62).  As such, it is unclear whether

2

Plaintiff is alleging that Dr. DeSantis violated some policy related to advising a student regarding how he answered particular exam questions, or whether Plaintiff is alleging that some other written policy exists at CMU and/or CMED that provides students with a right to review grades and transcripts.

Furthermore, as a point of fact, students in the College of Medicine are given the opportunity to review their exam answers. Following each anatomy lab exam, all three lab instructors would conduct a review session. All students were encouraged to attend these review sessions and to ask questions. Consequently, Dr. DeSantis has absolutely no idea what "policy practice, protocol . . . rules, regulations, [and/or] code of conduct " he stands accused of having violated. (PageID#15-16, ¶¶62-63). It is not even clear from the allegations if Plaintiff is claiming that Dr. DeSantis violated one policy, or whether Plaintiff is claiming that Dr. DeSantis violated multiple polices, practices, and rules.

### B.   Plaintiff's allegations that Defendants violated unidentified policies with regard to the NBS retake examination.

In any event, Plaintiff eventually failed the NBS course in October, 2016. (PageID#21, ¶79). As Plaintiff admits, he was given the opportunity to retake the NBS exam. (PageID#22, ¶84). Yet, Plaintiff claims that the format and structure of the NBS retake examination violated some unidentified "CMU policy, practices, [and] protocol" because Plaintiff was required to score 70% on the anatomy lab portion of the retake exam. (PageID#23, ¶87).

Again, Plaintiff does not identify any written policy that prevented the Defendants from requiring him to demonstrate minimal competency in anatomy given that he had scored so poorly on the anatomy portion of the original exam (Plaintiff scored **36%** on the anatomy portion of the original exam).  (Page#21, ¶79). In fact, as Plaintiff candidly acknowledges, in all of the exams that he took in medical school up to the time that he failed the NBS course for the first time, he never scored higher than **53%** on the anatomy lab portion of **any** exam.  (PageID#24, ¶92).

Nevertheless, Plaintiff claims that the academic decision to require him to demonstrate competency in anatomy in order to pass NBS deviated from some unidentified "policy, practice, procedure and guidelines . . . ." (PageID#24, ¶89). Plaintiff also alleges the questions on the NBS retake examination, which were allegedly written by the anatomy lab practical instructors, Dr. DeSantis and Dr. Spencer, "opposed the structure and format" of the original examination and that the questions were somehow inconsistent with "the course syllabus and lab practical manual." (PageID#27, ¶100).  In addition, Plaintiff claims that the NBS retake exam violated "policies, practices, guidelines and protocol" because he was required to identify images of anatomy structures on a computer screen rather than on human cadavers.  (PageID#27, ¶102)

Again, Plaintiff fails to adequately describe or identify the portion or portions of "the course syllabus and lab practical manual" that the NBS retake exam questions

4

supposedly "opposed" in "structure and format" as compared to the original examination.   (PageID#27, ¶100).  Plaintiff also does not bother to explain which "policies, practices, guidelines and protocol" were allegedly violated because the retake exam did not use human cadavers.  (PageID#27, ¶102).  Plaintiff does not even explain whether he claims that one or more Defendants violated the same single policy or whether he is claiming that multiple Defendants violated multiple policies, practices and guidelines.

Furthermore, Plaintiff's allegations in this regard are particularly difficult to understand given that he was the only student in his cohort to fail the NBS course in October, 2016 (at least Plaintiff does not allege any other student failed the course).  Consequently, with regard to the NBS retake exam, Plaintiff's treatment cannot be compared to that of some other similarly situated student.  Rather, Plaintiff appears to be alleging that he is able to prove discrimination solely because the NBS retake examination allegedly deviated from some unidentified policies – without identifying those policies.  (PageID#28, ¶104).  The Defendants are entitled to know which policy or policies they stand accused of having violated.

**C.    Plaintiff's allegations that Defendants violated unidentified policies with regard to the NBS remediation examination.**

After Plaintiff failed the NBS retake examination, he was offered another opportunity to pass the course by taking a remediation exam.  Here again, Plaintiff vaguely complains that the structure, format, and timing of the remediation

examination violated unidentified "polices, practices, guidelines [and] procedures" (PageID#30, ¶114; see also PageID#32, ¶120, 122).  It is not clear from these vague allegations whether Plaintiff is repeatedly contending that the same polices were violated, or whether he intends each separate allegation to assert a different violation of some different policy.

**D.     Plaintiff's vague allegations regarding the other opportunities that he was given to remediate his failing grades.**

After Plaintiff was unable to pass his NBS course with either the retake examination or the remediation exam, he failed his GI course, too.  (PageID#33, ¶124).  Accordingly, Plaintiff was provided more opportunities to challenge his failing grades through an appeal process.  In particular, Plaintiff was given an appeal with Dr. Linda Perkowski, but he claims that the appeal somehow violated some unidentified "policies, practices, guidelines and protocols."  (PageID#34, ¶127).[1]

Plaintiff was also given the opportunity to appear before the Student Performance and Conduct Committee ("SPCC") in early 2017; however, he claims that at the SPCC hearing he was denied access to some unidentified "information," which Plaintiff claims violated more unidentified "polices, practices, procedures, guidelines and protocols" at CMU and/or "polices, practices, **rules**, guidelines" and

---

[1] Apparently, the only reason that Plaintiff claims that Dr. Perkowski's review of his appeal violated CMU's polices is because she denied the appeal.  (*Id*.)

6

"procedures."   (PageID#35, ¶¶132, 133) (emphasis added).  It is unclear whether Plaintiff's reference to "protocols" in one allegation is intended to be the same as, or different from, his reference to "rules" and "protocols" in the subsequent allegation. In short, there is simply no way for Defendants to know what Plaintiff is alleging so that they can reasonably prepare a response.

The SPCC later decided that Plaintiff would be allowed to repeat his second year of medical school.  Yet, Plaintiff claims that even that decision, which saved him from academic dismissal, violated CMU's "policy and procedures with respect to how curriculums [sic – curricula] are established and approved by CMU/CMED" (PageID#37-38, ¶¶141) and that some unidentified "Defendants" violated some unidentified "polices, practices, rules, guidelines and protocols" by informing Plaintiff's cohort that he would no longer be participating in group activities. (PageID#38-39, ¶145).

None of the policies or procedures that were supposedly violated are identified, so Defendants are left to guess what Plaintiff might possibly be referring to.  Moreover, these types of vague allegations are repeated throughout the Complaint without ever providing any indication regarding the policies that the Defendants supposedly violated.  (PageID#40, 43-50, ¶¶151, 163, 169, 174, 175, 176, 177, 182, 184, 185).

## **LEGAL ARGUMENT**

The Federal Rules of Civil Procedure provide that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  In light of the modern practice of notice pleading and the availability of discovery, motions for more definite statement are often disfavored by courts.  *Federal Ins. Co. v. Webne*, 513 F.Supp.2d 921, 924 (N.D. Ohio, 2007). However, where the allegations in the complaint fail to put the defendant on notice of the basic nature of the claims that have been asserted, so that the defendant can prepare an appropriate response, the motion is properly granted.  *BAC Home Loans Servicing L.P. v. Fall Oaks Farm, LLC*, Case No. 11-cv-274, 2011 WL 6749066 (S.D. Ohio, Dec. 22, 2011).[2]  Furthermore, the Supreme Court has held a district court "must exercise its discretion" in a way that "protects the substance of the qualified immunity defense," which may include ordering a more definite statement. *Crawford-El v. Britton*, 523 U.S. 574, 597; 118 S.Ct. 1584 (1998).

In the case at bar, Drs. DeSantis, Griffin, Perkowski and Spencer are all entitled to qualified immunity, at least with regard to the only two counts that have been asserted against them that they have not already sought to dismiss – *i.e.*, the two §1983 claims that Plaintiff has pleaded against them in their individual

---

[2] A copy of the unpublished decision is attached hereto as **Exhibit A**.

capacities.  Neither the text of §1983, nor the Federal Rules of Civil Procedure, imposes a heighten pleading standard on a plaintiff who files a complaint against a public official alleging a claim that requires proof of wrongful motive, such as the discrimination claims that Plaintiff has filed in the case at bar.  *Crawford-El*, 523 U.S. at 594.  However, given the strong public interest in protecting public officials from the costs associated with defending insubstantial lawsuits, the "firm application" of the Federal Rules of Civil Procedure is fully warranted.  *Id*. at 597 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819; 102 S.Ct. 2727 (1982)).

Stated otherwise, when a plaintiff brings a §1983 claim against a public official that involves the official's state of mind, the district court "must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings."  *Id*. at 587-98.  In such cases, the Supreme Court has expressly held that it may be necessary for the district court to grant the defendant's motion for a more definite statement under Rule 12(e).  *Id*. at 598.  In this way, the district court will merely insist that the plaintiff has "put forward specific, nonconclusory factual allegations" that establish improper motive causing cognizable injury "in order to survive a prediscovery motion for dismissal or summary judgment."  *Id*. (citation omitted).

In the case at bar, Plaintiff has failed to put forward specific nonconclusory factual allegations to establish claims under 42 U.S.C. §1983.   Instead, Plaintiff is

trying to hide behind vague allegations that some Defendants violated unidentified policies, procedures and guidelines of CMU.  Plaintiff should be required to provide a more definite pleading so that the Defendants can appropriately determine whether they are entitled to qualified immunity based on the allegations in the Complaint alone.  The Defendants should not be forced to bear the costs associated with defending an insubstantial lawsuit through discovery merely because Plaintiff has chosen to plead his claims in such a vague manner.

Indeed, in bringing this lawsuit, Plaintiff has adopted the strategy of trying to make this as difficult as possible to ascertain which claims are asserted against which Defendants.  Numerous allegations are asserted against the "Defendants" generally, without identifying which of the Defendants the allegation is actually referring to. (See PageID#9-95, ¶¶ 38, 76, 121, 122-125, 136, 141, 142-146, 148, 152-154, 161, 162, 167, 174, 181, 182, 186, 187, 190, 194-197, 200, 201, 207, 210-212, 215-218, 220-222, 225-228, 231, 232, 236, 238, 239-242, 249, 251, 254-258, 261-262, 264-267, 271-284, 293-295, 297, 301, 306, 308-311, 313, 326-329, 331-337, 339, 342). In addition, as explained above, at least 23 paragraphs allege that a Defendant violated some unidentified policy, procedure, guideline or rule.  (PageID#15-50, ¶¶ 62, 87, 89, 114, 120, 122, 123, 124, 127, 132, 133, 141, 151, 163, 169, 174, 175, 176, 177, 182, 184, 185).  Together, the vagueness of these allegations make the Complaint virtually impossible to answer as it is currently drafted.

Certainly, requiring Defendants to use discovery to learn more about Plaintiff's vague allegations is not an adequate remedy in the present case. Again, the individual Defendants are entitled to qualified immunity; they should not be required to toil through a lengthy discovery process merely because Plaintiff is unable to plead "specific, nonconclusory factual allegations" against any Defendant. *Crawford-El*, 523 U.S. at 597-98. Moreover, the number of interrogatories allowed in federal-court litigation is generally quite limited. *See* Fed. R. Civ. P. 33. Given the large number of defective allegations in the Complaint, it may be difficult or impossible for Defendants to use interrogatories to obtain adequate information from Plaintiff regarding his vague allegations. Further, during a deposition, Plaintiff may defer to his attorney regarding specific questions about the allegations in the Complaint because Plaintiff's attorney is presumably the one who drafted the Complaint.

In effect, Plaintiff may be able to avoid providing any useful information regarding the vague allegations in his Complaint, unless the Court orders him to produce a more definite statement. Therefore, the Court should grant Defendants' Motion for More Definite Statement pursuant to Fed. R. Civ. P. 12(e).

## CONCLUSION

For the foregoing reasons, Defendants Central Michigan University Board of Trustees, Dr. Mark DeSantis, Dr. Daniel Griffin, Dr. Linda Perkowski, and Dr. Marc

Spencer respectfully request that this Honorable Court GRANT their Motion for More Definite Statement and enter an order that requires Plaintiff to file an amended complaint that provides a more definite statement by: (1) specifically identifying the policy, procedure, rule, guideline, practice, protocol, regulation, syllabus, manual, and/or code that was allegedly violated in each of the following paragraphs: (¶¶ 62, 87, 89, 100, 114, 120, 122, 123, 124, 127, 132, 133, 141, 151, 163, 169, 174, 175, 176, 177, 182, 184, 185), and (2) specifically identifying which Defendant or Defendants is referred to in the following paragraphs: PageID#9-95, ¶¶ 38, 76, 121, 122-125, 136, 141, 142-146, 148, 152-154, 161, 162, 167, 174, 181, 182, 186, 187, 190, 194-197, 200, 201, 207, 210-212, 215-218, 220-222, 225-228, 231, 232, 236, 238, 239-242, 249, 251, 254-258, 261-262, 264-267, 271-284, 293-295, 297, 301, 306, 308-311, 313, 326-329, 331-337, 339, 342).

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: May 16, 2019           By: */s/ Michael E. Cavanaugh*
                                   Michael E. Cavanaugh (P11744)
                                   Ryan K. Kauffman (P65357)

### CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Cyril Hall served electronically.

/s/ Michael E. Cavanaugh
Michael E. Cavanaugh (P11744)