UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VINCENT BERRY**,

    Plaintiff,

v

**CENTRAL MICHIGAN UNIVERSITY, CENTRAL MICHIGAN UNIVERSITY MEDICAL SCHOOL, MARK DESANTIS, MARIE C. MATTE, BRIAN SLENSKI, TINA THOMPSON, LINDA PERKOWSKI, DANIEL GRIFFIN, MARC SPENCER, JAMIE ALAN, ROBERT PETERSON, JULLIEN ROSSIGNOL, SANDRA HOWELL,** and **GEORGE KIKANO**,

    Defendants.

Case No. 2:19-cv-10306-TGB-SDD

Hon.   Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

Vincent Berry,
*In Pro Per*
6456 Kendal St.
Dearborn, MI 48126

Michael E. Cavanaugh (P11744)
Ryan K. Kauffman (P65357)
Fraser Trebilcock Davis & Dunlap, P.C.
Attorneys for Defendants
124 W. Allegan, Suite 1000
Lansing, MI 48933
(517) 482-5800
mcavanaugh@fraserlawfirm.com
rkauffman@fraserlawfirm.com

### DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

NOW COMES Defendants Central Michigan University Board of Trustees, Central Michigan Medical School, Mark DeSantis, Brian Slenski, Tina Thompson, Linda Perkowski, Daniel Griffin, Marc Spencer, Jamie Alan, Robert Peterson,

Jullien Rossignol, Sandra Howell and George Kikano[1], and respectfully move the Court to dismiss this action with prejudice pursuant to Fed. R. Civ. P. 41(b). In support of this Motion Defendants state:

1. Plaintiff Berry was formerly enrolled in medical school at Central Michigan University (CMU) College of Medicine. Plaintiff failed **five** different courses in a little more than a year. Plaintiff was given numerous opportunities to remedy his failing grades through various remediation efforts and appeals, but he failed to remedy the failing grades. Facing academic dismissal, Plaintiff instead voluntarily withdrew from the program.

2. Plaintiff filed this lawsuit in January 2019 against CMU, CMU Medical School, the Dean of the Medical School and 11 other professors and administrators. His 98 page, 342 paragraph Complaint is so devoid of merit, it is frivolous. His Complaint defames the Defendants. He accuses them of engaging "in improper, unethical and illegal practices." (ECF No. 1, PageID#7, ¶28). He also accuses various Defendants of discrimination and retaliation based upon color, national origin, sex, religion and race. (*See for example* ECF No. 1, PageID#15-20, ¶¶63-75; and ECF No. 1, PageID#32, ¶¶21-123.)

---

[1] Defendant Marie C. Matte was never served with the Summons or the Complaint.

3. On May 16, 2019 Defendants filed five Motions to Dismiss various Defendants and a Motion for More Definite Statement. The Plaintiff has not responded to any of those motions.

4. On June 24, 2019 Plaintiff's counsel filed a Motion to Withdraw saying that there had been "a substantive and significant breakdown in the attorney-client relationship between Plaintiff and his counsel" (ECF No. 16, PageID#320, ¶3.)

5. On June 25, 2019 this Honorable Court entered an Order Granting the Motion to Withdraw and stating that "Plaintiff shall be given 45 days from the date of entry of this order to obtain new counsel, whose appearance should be filed within the 45-day period." (ECF No. 17, PageID#323, ¶2)

6. Plaintiff failed to obtain new counsel within the 45 days ordered by the Court and on August 23, 2019 the Court entered an Order to Show Cause and stated "PLAINTIFF IS HEREBY ORDERED to SHOW CAUSE why this case should not be dismissed for failure to prosecute by responding as set forth below." The Order then directed Plaintiff to communicate with the Court in writing within 14 days whether he wishes to continue pursuing this lawsuit by representing himself and if not communicate the name of the attorney he has retained to handle the case." (ECF No. 20, PageID#327-328.)

7. On September 13, 2019 the Court received a letter dated September 6, 2019 from Plaintiff. In the letter the Plaintiff stated that: "I have met/spoken with

nine attorneys on this matter and could provide their names if necessary." (ECF No. 21, PageID#329.) Despite having spoken to nine attorneys, the Plaintiff was unable to find an attorney to take his case. On September 16, 2019 the Court entered a TEXT-ONLY ORDER granting Request for Extension of Time, allowing the Plaintiff until November 1, 2019 to obtain a new attorney or notify the Court that he intends to proceed without an attorney.

8.   A new attorney did not appear on or before November 1, 2019 and Plaintiff has apparently not notified the Court that he intends to proceed without an attorney. Plaintiff has not contacted defense counsel.

9.   The Plaintiff has had ample time to proceed with this case, but has failed to do so. The Plaintiff has had ample warnings from the Court that he is in danger of having his case dismissed.

10.   The Defendants lives have been disrupted by this already lengthy lawsuit. The Defendants have been accused by Plaintiff of "improper, unethical and illegal practices." (ECF No. 1, PageID# 7, ¶27). They have been accused by Plaintiff of discrimination based upon color, national origin, sex, religion and race. (ECF No. 1, PageID#15-20, ¶¶63-75; and ECF No. 1, PageID#32, ¶¶21-123). In our society, especially in the academic community, there are no more serious allegations.. The Defendants have incurred substantial expense to date in defending

against this meritless 98 page, 342 paragraph Complaint. The Defendants are entitled to closure.

11. Defendants have been unable to obtain Plaintiff's concurrence in this motion. Since Plaintiff's attorney withdrew on June 25, 2019, Plaintiff has not provided Defendants or, apparently, the Court will his telephone number, email address, or other contact information. As such, Defendants counsel was unable to call or email Plaintiff to seek concurrence. Today, a copy of this motion and the supporting brief was sent by U.S. First Class mail to Plaintiff at the address listed on Plaintiff's last correspondence with the Court. (*See* ECF No. 21, PageID 329).

WHEREFORE, for the reasons set forth above and for the reasons set forth in the Brief in support of this Motion, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss and enter an order that dismisses this case in its entirety with prejudice.

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: November 5, 2019   By: */s/ Michael E. Cavanaugh*
　　　　　　　　　　　　　　　Michael E. Cavanaugh (P11744)
　　　　　　　　　　　　　　　Ryan K. Kauffman (P65357)

## CERTIFICATE OF SERVICE

    I hereby certify that on November 5, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and sent to Plaintiff by U.S. mail to 6456 Kendal Street, Dearborn, MI 48126 and to 3218 Lindenwood Drive, Dearborn, MI 48120.

                                          /s/ Michael E. Cavanaugh
                                          Michael E. Cavanaugh (P11744)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VINCENT BERRY**,

    Plaintiff,

v

**CENTRAL MICHIGAN UNIVERSITY, CENTRAL MICHIGAN UNIVERSITY MEDICAL SCHOOL, MARK DESANTIS, MARIE C. MATTE, BRIAN SLENSKI, TINA THOMPSON, LINDA PERKOWSKI, DANIEL GRIFFIN, MARC SPENCER, JAMIE ALAN, ROBERT PETERSON, JULLIEN ROSSIGNOL, SANDRA HOWELL,** and **GEORGE KIKANO**,

    Defendants.

Case No. 2:19-cv-10306-TGB-SDD

Hon.  Terrence G. Berg
Magistrate Judge Stephanie Dawkins Davis

Vincent Berry,
*In Pro Per*
6456 Kendal St.
Dearborn, MI 48126

Michael E. Cavanaugh (P11744)
Ryan K. Kauffman (P65357)
Fraser Trebilcock Davis & Dunlap, P.C.
Attorneys for Defendants
124 W. Allegan, Suite 1000
Lansing, MI  48933
(517) 482-5800
mcavanaugh@fraserlawfirm.com
rkauffman@fraserlawfirm.com

# DEFENDANTS' BRIEF IN SUPPORT OF
# THEIR MOTION TO DISMISS WITH PREJUDICE

# TABLE OF CONTENTS

LIST OF AUTHORITIES.................................................................................... ii

STATEMENT OF FACTS .................................................................................1

    A.    Factual Allegations from the Complaint........................................................1

    B.    Procedural History.................................................................................6

STANDARD OF REVIEW ................................................................................7

LEGAL ARGUMENT.........................................................................................7

CONCLUSION..................................................................................................10

# LIST OF AUTHORITIES

**Cases**

*Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359 (6th Cir. 1999)..........................7, 8

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214; 106 S.Ct. 507 (1985)..................................................................................................................7

*Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349 (6th Cir. 2015)..........8

**Rules**

Fed. R. Civ. P. 41(b) ...................................................................................7, 8, 10

Fed. R. Civ. P12(b)(1)..............................................................................................6

Fed. R. Civ. P12(b)(6)..............................................................................................6

**STATEMENT OF FACTS**

A.     **Factual Allegations from the Complaint**

Plaintiff Vincent Berry was formerly enrolled in medical school at Central Michigan University ("CMU") College of Medicine.  Plaintiff withdrew from the program in March, 2018, in lieu of accepting an academic dismissal, after he failed **five** different courses in a little more than one year.  Plaintiff was given numerous opportunities to remedy his failing grades through various remediation efforts and appeals.  However, after extensive due process and careful deliberation, it was ultimately determined that Plaintiff had failed to satisfy the academic requirements of CMU's medical school program.

Plaintiff began taking classes in the CMU College of Medicine during the 2015 Fall Semester.[1]  (ECF No. 1, PageID#12-14, ¶¶52, 55-56).  In the 2016 Fall Semester, Plaintiff began his second year of medical school.  (ECF No. 1, PageID#20, ¶77).  One of the courses that Plaintiff took that semester was Neuroscience and Behavior ("NBS"), which began on September 1, 2016, and concluded on October 24, 2016.  (*Id.*, *see also* ECF No. 1, PageID#22, ¶83).  The

---

[1] The following facts are taken from the Complaint.  By restating the facts as pleaded by Plaintiff, Defendants are not admitting to any allegation.  In fact, Defendants contend that many of the allegations in the Complaint are untrue.  Nevertheless, they recognize that for purposes of the present motion, the Court will accept all well-pleaded facts as true.

1

NBS course included three separate components: a didactic portion, an anatomy lab portion, and a team-based learning portion. (ECF No. 1, PageID#21, ¶79).

At the end of the NBS course, Plaintiff's combined score for the three portions of the NBS course was 69%, which was a failing grade.² (ECF No. 1, PageID#21, ¶79). Plaintiff scored exceptionally poorly on the anatomy lab portion of the course by achieving a grade of only **36%**. (*Id*.) There is no allegation in the Complaint that any other student in Plaintiff's cohort failed the NBS course.

On October 25, 2016, Plaintiff met with Dr. Marie Catherine Matte, the Associate Dean for Compliance, Assessment and Evaluation, to discuss his failing grade in the NBS course. (ECF No. 1, PageID#3, ¶7 and ECF No. 1, PageID#22, ¶84). At the meeting, Dr. Matte presented Plaintiff with three options to remedy the grade: (1) appeal the course grade; (2) retake the final exam; or (3) remediate the course over the up-coming winter break. (ECF No. 1, PageID#22, ¶84). Although choosing to remediate the course over winter break would have given Plaintiff more than two months to study and prepare, Plaintiff instead chose to retake the final exam.³ (ECF No. 1, PageID#22-23, ¶85). Because Plaintiff chose to retake the NBS final exam, rather than to remediate the course over winter break, the retake exam

---

² Students were required to achieve 70% for a passing grade.
³ Plaintiff apparently chose not to remediate the NBS course during winter break because he did not want to give up his vacation plans. In a nod to this fact, the Complaint alleges that "winter break (M2 Holiday Break)" was "a known period of time-off for students following a Fall Semester." (ECF No. 1, PageID#22, ¶84).

2

was scheduled to occur while Plaintiff was taking another course, Gastrointestinal ("GI"), which began near the end of October, and continued through early December, 2016. (ECF No. 1, PageID#25, ¶96 and ECF No. 1, PageID#31, ¶119). Plaintiff then took the NBS retake exam in early November, 2016, and once again failed to obtain a passing grade. (ECF No. 1, PageID#28, ¶104).

After Plaintiff failed the NBS retake exam, he was offered yet another opportunity to remediate the course by taking a remediation exam. (ECF No. 1, PageID#30, ¶114). Plaintiff was again offered the opportunity to take the remediation exam at the end of winter break (in early January, 2017), which would have given Plaintiff additional time to prepare and which would have allowed him to better focus on his on-going GI course; however, Plaintiff instead chose to take the remediation exam *before* winter break. Accordingly, the NBS remediation exam was scheduled for December 8, 2016, and occurred the same week as Plaintiff's final exam in his GI course. (ECF No. 1, PageID#31, ¶119).

Ultimately, Plaintiff failed the NBS remediation exam (with a score of 52.5%). (ECF No. 1, PageID#32, ¶120). In addition, Plaintiff also failed the GI course. (ECF No. 1, PageID#33, ¶124). However, rather than accepting responsibility for his own academic shortcomings, Plaintiff instead insists that the entire process surrounding the NBS retake and remediation exams, as well as his subsequent failure in the GI course, violated some unidentified and vaguely-

3

described CMU policy. (ECF No. 1, PageID#15-33, ¶¶62, 87, 89, 114, 120, 122, 123).

In any event, after failing to successfully remediate NBS, and then failing his GI course, Plaintiff was allowed to take an appeal with Dr. Linda Perkowski, the Year 1-2 Director.[4] (ECF No. 1, PageID#34, ¶127). After her review, however, Dr. Perkowski denied Plaintiff's appeal. (*Id.*) At that point, Plaintiff was not allowed to go any further with his medical school education or to continue with his matriculation into the next semester. (ECF No. 1, PageID#34-35, ¶¶130-132).

Yet, Plaintiff was still not academically dismissed. Instead, Plaintiff was given the opportunity to appear before the Student Performance and Conduct Committee ("SPCC") on January 23, 2017. (ECF No. 1, PageID#35-36, ¶¶132-133). Although the SPCC could have dismissed Plaintiff from the medical school program because he had failed two classes in one semester, the SPCC instead decided that Plaintiff would be allowed to repeat his second-year of medical school. (ECF No. 1, PageID#35-36, ¶¶132-133).

Thereafter, in the Fall of 2017, Plaintiff resumed his medical school education by repeating his second-year classes. (ECF No. 1, PageID#40, ¶150). Plaintiff again took NBS during the first half of the semester, and he failed that course for a **second**

---

[4] Plaintiff alleges that Dr. Perkowski was the "Year 1-2 Director," but she was a Senior Associate Dean.

4

time. (ECF No. 1, PageID#42, ¶¶158-159). Thereafter, on or about November 14, 2017, Plaintiff appealed his second failing grade in the NBS course to Dr. Daniel Griffin. (ECF No. 1, PageID#47, ¶177). Dr. Griffin, however, denied Plaintiff's appeal. (ECF No. 1, PageID#49, ¶179). During the time that Plaintiff's appeal with Dr. Griffin was pending, Plaintiff also failed the GI course for the second time. (ECF No. 1, PageID#50, ¶185).

Because Plaintiff failed two classes during his attempt to repeat the second year, NBS and GI (*i.e.*, the same two classes that he failed the first time that he matriculated through Year 2 of the curriculum), Plaintiff was subject to academic dismissal. Accordingly, in early 2018, Plaintiff again appeared before the SPCC. (ECF No. 1, PageID#49, ¶181). This time, the SPCC determined that Plaintiff should be dismissed from the medical school program rather than be given further chances to pass his second-year courses. (ECF No. 1, PageID#50, ¶184).

However, Plaintiff's academic dismissal was **still** not final. Instead, an *ad hoc* committee set up by Dr. Tina Thompson, the Dean of the College of Medicine, overturned the SPCC decision and offered Plaintiff one more opportunity to remediate the NBS and GI courses, as long as he did so by the end of the academic year. (ECF No. 1, PageID#50, ¶185). As such, Plaintiff continued in the program by taking Hematology Oncology during the 2018 Spring Semester. (ECF No. 1, PageID#51, ¶186). That course was completed in March, 2018, with Plaintiff once

5

again failing to achieve a passing grade. (ECF No. 1, PageID#51, ¶187). Plaintiff's failure to pass Hematology Oncology was the **fifth** class that Plaintiff had failed in a little more than one year. At that point, Plaintiff finally withdrew from the College of Medicine. (ECF No. 1, PageID#54-55, ¶201).

### B. Procedural History

Plaintiff filed his complaint in this matter on January 31, 2019. (ECF No. 1). Thereafter, on May 16, 2019, Defendants filed several separate Motions to Dismiss pursuant to Fed. R. Civ. P12(b)(1) and/or (6) for various Defendants, and a Motion for More Definite Statement with regard to the remaining Defendants. (ECF Nos. 3-8). By stipulation, the parties then agreed that Plaintiff would have until June 27, 2019 to file responses to those motions. (ECF No. 14, PageID#312-313).

On June 24, 2019, three days before Plaintiff was required to respond to Defendants' motions, Plaintiff's attorney filed a Motion to Withdraw. (ECF No. 16, PageID#319-321). The Court granted the Motion to Withdraw on June 25, 2019, and directed Plaintiff to obtain new counsel within 45 days. (ECF No. 17, PageID#322-323). When no appearance was filed indicating the Plaintiff had obtained new counsel, the Court entered an Order to Show Cause on August 23, 2019. (ECF No. 20, PageID#327-328). The Order stated in relevant part that "Plaintiff is hereby ORDERED to SHOW CAUSE why this case should not be

dismissed for failure to prosecute by responding as set forth below." (*Id.*) Plaintiff was ordered to communicate to the Court in writing within 14 days. (*Id.*)

Plaintiff responded on September 13, 2019, by indicating that he anticipated that he would be able to secure an attorney within the next 45 days. (ECF No. 21, PageID#329). The Court provided Plaintiff the additional time as requested. That additional 45 days expired on October 31, 2019, and still Plaintiff has no attorney.

## STANDARD OF REVIEW

Whether to grant a Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b) is left to the discretion of the trial court. *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).

## LEGAL ARGUMENT

As the United States Supreme Court recognized more than three decades ago, "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225; 106 S.Ct. 507 (1985). "Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id*. This reluctance to intervene in academic decisions is especially important with regard to degree requirements in the health care field where students will enter into "a

7

profession whose practitioners are entrusted with life and death decisions." *Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 353 (6th Cir. 2015) (citations omitted).

Here, Plaintiff failed five different courses in a little more than one year. Plaintiff was given numerous opportunities to remedy his failing grades, but after extensive due process and careful deliberation, it was ultimately determined that Plaintiff had failed to satisfy the academic requirements of CMU's medical school program. The Defendants' academic judgment cannot be seriously challenged. Not everyone is suited to be a physician.

Nevertheless, Plaintiff began this lawsuit. However, other than filing his initial pleading, he has been unable or unwilling to continue prosecute the matter. His counsel withdrew four months ago, and since then Plaintiff has be unable to find new counsel, despite the Court having provided him with ample opportunities to do so. Pursuant to Fed. R. Civ. P. 41(b) "[i]f the plaintiff fails to prosecute or to comply with th[e] rules or a court order, a defendant may move to dismiss the action . . . ." Unless otherwise stated, a dismissal under Fed. R. Civ. P. 41(b) operates as an adjudication on the merits. *Id*.

Fed. R. Civ. P. 41(b) is available to the district court as a tool to effect "management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties." *Knoll*, 176 F.3d at 363 (citation omitted).

8

In determining whether to dismiss pursuant to Rule 41(b), courts consider the following: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered. *Id*. at 363.

Here, this Court directed Plaintiff to find new counsel within 45 days of June 25, 2019. (ECF No. 17, PageID#322-323). When Plaintiff failed to do, the Court entered an Order to Show Cause. (ECF No. 20, PageID#327-328). While the Court thereafter provided Plaintiff with even more time to find another attorney, to date Plaintiff has been unable to find anyone to represent him in this matter. Plaintiff has also failed to take any other action to respond to Defendants' Motions to Dismiss (which have now been pending for nearly 6 months).

Simply put, Plaintiff is at fault for his own failure to retain an attorney and to proceed. By causing this meritless action to remain stalled for months, Plaintiff has prejudiced Defendants, most of whom are individual educators who have been sued in their individual capacities. These Defendants deserve a resolution of this matter, so that they may return to their normal lives. Moreover, the Court warned Plaintiff months ago that this action would be dismissed if he did not retain an attorney, but Plaintiff had not heeded that warning. At this point, no other less drastic sanction can or should be imposed. Consequently, because Plaintiff has failed to prosecute

this lawsuit, and because he has failed to comply with the court rules and this Court's prior orders, dismissal pursuant to Fed. R. Civ. P. 41(b) fully warranted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court GRANT their Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b) and that the Court enter an Order to dismiss this action in its entirety with prejudice.

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendants

Dated: November 5, 2019     By: */s/ Michael E. Cavanaugh*
　　　　　　　　　　　　　　　Michael E. Cavanaugh (P11744)
　　　　　　　　　　　　　　　Ryan K. Kauffman (P65357)

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and sent to Plaintiff by U.S. mail to 6456 Kendal Street, Dearborn, MI 48126 and to 3218 Lindenwood Drive, Dearborn, MI 48120.

　　　　　　　　　　　　　　　/s/ Michael E. Cavanaugh
　　　　　　　　　　　　　　　Michael E. Cavanaugh (P11744)